LAW OFFICES
BROENING OBERG WOODS & WILSON
PROFESSIONAL CORPORATION
2800 NORTH CENTRAL, 16TH FLOOR
PHOENIX, AZ 85004
(602) 271-7700
Sarah L. Barnes /Bar No. 020362
Kelley M. Jancaitis /Bar No. 025555
E-mail: slb@bowwlaw.com
kel@bowwlaw.com
kmj@bowwlaw.com
mjk@bowwlaw.com
*Attorneys for Defendants City of Phoenix, Sullivan, Ladines, Garza, Roy, Ravelo, Ramirez and Howard*

**IN THE UNITED STATES DISTICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Kashane Kirk, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Phoenix, *et al.*,<br><br>Defendants. | Case No. CV 23-00836-MTL (CDB)<br><br>**MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) & RULE 8(d)** |

Defendants City of Phoenix, Phoenix Police Department Chief Michael Sullivan, Autumn Ladines, Antonio Garza, Eric Roy, Jaclyn Ravelo, Steven Ramirez and Jonathan Howard (collectively referred to hereinafter as "Defendants"), by and through counsel undersigned, move the Court for dismissal of the entire complaint pursuant to Federal Rule of Civil Procedure ("Rule") 8(d), or alternatively, for dismissal of all or portions of the following counts: Count I (wrongful death); Count II (excessive force); Counts III, IV, and VIII (*Monell* liability); Count V (duty and failure to intervene); Count VI (gross negligence); and Count VII (battery) pursuant to Rule 12(b)(6).[1]

---

[1] Through counsel's signature below, Defendants certify in accordance with LR Civ. 12.1(c) that before filing this Motion Defendants notified Plaintiffs in writing of the issues to be asserted and the Parties met and conferred on these issues. Defendants' position is that the

Briefly, Plaintiffs' Amended Complaint seeks compensation for themselves and the Estate of Leontae Kirk arising out of the shooting death of Mr. Kirk on November 2, 2022. The Amended Complaint fails to state a claim in several respects. As to Counts II (excessive force), V (failure to intervene), VI (gross negligence) and VII (battery) as they are asserted against Defendants Ravelo, Ramirez, or Howard, the Amended Complaint does not allege any facts suggesting these Defendants caused an offensive or harmful contact with Mr. Kirk's person; used any (let alone excessive force) toward Mr. Kirk; or had any opportunity to intervene because they were not present during the shooting. *See* Sections II, III, IV(B), (V), *infra*. As to Counts III, IV, and VIII (*Monell* claims) asserted against the City and Chief Sullivan, Plaintiffs offer only general legal conclusions without sufficient supporting facts to implicate supervisor or municipal liability for the individual officers' conduct (Counts III, IV, and VIII). *See* Section VI, *infra.* As to Count I (wrongful death and survivorship action), to the extent it is asserted against Defendants Ravelo, Ramirez, and Howard, Plaintiffs factual contentions in support of this claim are premised on the factually deficient excessive force, failure to intervene, and/or gross negligence claims. *See* Section VII, *infra*. Because Plaintiffs fail to state a single valid claim against Defendants Ravelo, Ramirez, and Howard, dismissal of these individual Defendants is warranted. Finally, Plaintiffs allege that punitive damages are warranted within Count I; however, because Count I is premised on state law claims, Plaintiffs punitive damages claim is barred by statute. *See* Section VIII, *infra.*

Rule 8 provides separate grounds for dismissal—or at least further amendment—of the Amended Complaint. *See* Section IX, *infra*. The Amended Complaint fails to meet the minimum pleading requirements because it: (1) fails to specifically and adequately identify the specific Defendant targeted by each claim; (2) contains argumentative, irrelevant, and

---

Amended Complaint (and prior voluntary dismissal of three of the Phoenix Defendants) cured some issues, however, it failed to address all of the issues as to at least some of the remaining Defendants previously communicated to Plaintiff's counsel; it is those remaining issues that are raised in this Motion.

speculative language designed to harass and annoy Defendants rather than advance legitimate claims; (3) relies on narration instead of factual allegations; and (5) generally fails to assert the "simple, concise, and direct" allegations mandated by Rule 8(d).

This Motion is supported by the attached Memorandum of Points and Authorities and the Court's record. As explained therein, dismissal and/or amendment is mandated pursuant to Rules 8 and 12.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   FACTUAL ALLEGATIONS**

According to the Amended Complaint, Plaintiffs are the surviving mother and child of Leontae Kirk and the Personal Representative of his Estate. (Doc. 27, ¶¶ 8-11.) The Amended Complaint alleges Mr. Kirk died from gunshot wounds administered by three PHXPD officers – Sergeant Roy, Officer Ladines, and Officer Garza – on November 2, 2023. (Doc. 27, ¶¶ 119.)

On the date of the incident, the Amended Complaint also alleges that 9-1-1 dispatchers received reports of an armed individual in the area. (Doc. 27, ¶¶ 87, 90, 96.) Then in response, PHXPD dispatched Officer Ramirez and Officer Howard to fly a helicopter over the scene. (Doc. 27, ¶ 72–73.) Per the Amended Complaint, these two officers observed Mr. Kirk and Humberto pointing guns at each other, (Doc. 27, ¶¶ 68, 73–74), and, based on what they saw, the helicopter officers radioed in an "active shooter" situation. (Doc. 27, ¶ 74.)

The Amended Complaint further alleges that Seargent Roy, Officer Ladines, Officer Garza, and Officer Ravelo, who were already in route to the scene, arrived shortly after the "active shooter" call went out through dispatch. Plaintiffs allege that Sergeant Roy, Officer Ladines, and Officer Garza fired at Mr. Kirk "without performing any assessment; without announcing; without de-escalation; and without even securing the scene." (Doc. 27, ¶ 186.) Missing from this group in the Amended Complaint is Officer Ravelo, who never fired her

- 3 -

weapon at Mr. Kirk. Moreover, the Amended Complaint acknowledges Mr. Kirk—still armed when these officers arrived—was seen "wav[ing] his gun up in the air" and "searching for cover." (Doc. 27, ¶ 98.)

In May 2023, Plaintiffs filed a complaint against Defendants, seeking general, special and punitive damages premised on violations of federal and state law. Specifically, Plaintiffs allege a wrongful death and survivorship action pursuant to A.R.S § 14-3110 (Count I), multiple violations of 42 U.S.C. § 1983 premised on excessive force (Count II though IV), failure to intervene (Count V), municipal *Monell* liability (Counts III, IV, and IX), as well as state law tort claims for negligence and gross negligence (Count VI), IIED (Count VII), and battery (Count VIII). (Doc. 1.) On October 25, 2023, Plaintiffs filed an Amended Complaint after the parties met and conferred regarding certain deficiencies in Plaintiffs' original Complaint. (Doc. 27.) The Amended Complaint dismissed three of the Defendant Officers named in the original complaint, dropped the IIED claim, and dropped the negligence claim (but maintaining a gross negligence claim). (*See* Docs 23, 27.) Despite these amendments, the Amended Complaint still asserts claims against Officer Ravelo, Officer Ramirez, and Officer Howard for wrongful death (Count I), excessive force (Count II), duty and failure to intervene (Count V), gross negligence (Count VI), and battery (VII), as well as the *Monell* claims (Counts III, IV, VIII). For the reasons discussed below, all or portions of all of these claims should be dismissed.

**II.     PLAINTIFFS CANNOT MAINTAIN A CLAIM FOR BATTERY AGAINST DEFENDANTS WHO DID NOT CAUSE A HARMFUL OR OFFENSIVE CONTACT WITH MR. KIRK'S PERSON**

In Count VII, Plaintiffs allege that all Defendants are liable for battery. (Doc. 27, ¶¶ 320–24.) At the outset, Plaintiffs Roberts (Mr. Kirk's mother) and Turner (the mother of Mr. Kirk's daughter M.C.) cannot maintain a battery claim against Defendants.

Because Mr. Kirk is deceased, the state-law claims alleging personal injuries arise under the survival statute, A.R.S. § 14-3110, whose purpose is to prevent liability from

ceasing upon the injured person's death. *Barragan v. Superior Court*, 12 Ariz. App. 402, 404, 470 P.2d 722, 724 (1970) (holding that a claim under the survival statute permits recovery for "the wrong to the injured person"); *Harleysville Mut. Ins. Co. v. Lea*, 2 Ariz. App. 538, 540, 410 P.2d 495, 497 (1966) (recognizing that actions for torts causing injuries that are strictly personal do not survive death under common law). Again, "[u]nder Arizona law, a claim under the survival statute may be brought only by a decedent's estate." *Manion v. Ameri-Can Freight Sys. Inc.*, 391 F. Supp. 3d 888, 891–92 (D. Ariz. 2019) (quoting *Gotbaum v. City of Phoenix*, 617 F. Supp. 2d 878, 883 (D. Ariz. 2008)). Only the personal representative, Plaintiff Kashane Kirk, may maintain a battery claim on behalf of Mr. Kirk.

Even if Plaintiffs Roberts and Turner could maintain such a claim, which they cannot, their battery claim against Defendants Ravelo, Ramirez, and Howard is improper. The elements of battery include an intentional act that "results in a harmful or offensive contact with the person of another." *Duncan v. Scottsdale Med. Imaging*, *Ltd*., 205 Ariz. 306, 309 ¶ 9, 70 P.3d 435, 438 (2003); *see also* Restatement (Second) of Torts § 13 (1965).

Here, the only bodily contact alleged in Plaintiffs' Amended Complaint relates to the bullets that struck Mr. Kirk. (Doc. 27, ¶ 320.) Only three Defendants – Ladine, Garza, and Roy, are alleged to have fired at Mr. Kirk. The remaining Defendants (Ravelo, Ramirez, and Howard), did not cause a single contact with Mr. Kirk's person. Plaintiffs fail to state a battery claim against Defendants Ravelo, Ramirez, and Howard.

### III. PLAINTIFFS CANNOT MAINTAIN A CLAIM FOR DUTY AND FAILURE TO INTERVENE AGAINST OFFICERS RAVELO, RAMIREZ, AND HOWARD BECAUSE THESE DEFENDANTS WERE "NON-SHOOTING" AND/OR "NON-PRESENT" AT THE TIME MR. KIRK WAS SHOT

In Count V, Plaintiffs allege that all defendants had a duty to prevent fellow law enforcement officers from violating Mr. Kirk's constitutional rights and each violated that duty when they failed to intervene. (Doc. 27, ¶¶ 297–301.) As argued above, Plaintiffs Roberts and Turner lack standing to assert this claim against Defendants because the alleged

injury is personal to Mr. Kirk. *See infra*, Section II. Nonetheless, even if Plaintiffs have standing to assert this claim, the Amended Complaint fails to assert a cognizable failure to intervene claim against Defendants Ravelo, Ramirez, and Howard.

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000) (citing *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996)). "Importantly, however, officers can be held liable for failing to intercede only if they *had an opportunity to intercede*." *Id.* (emphasis added). In *Cunningham v. Gates*, the very case Plaintiffs cite in Paragraph 297 of the Amended Complaint to support their duty and failure to intervene claim—the Ninth Circuit concluded that "non-shooting and non-present officers cannot be held liable for failing to intercede to prevent" an individual from being shot because they were "not present at the time of the shootings" and/or lacked a "realistic opportunity" to intervene. *Cunningham*, 229 F.3d at 1290. *See also Bruner v. Dunaway*, 684 F.2d 422, 426-27 (6th Cir. 1982) (holding that officers who were not present at the time of the alleged assault could not be held liable in a section 1983 action); *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) (granting arresting officers' motion for summary judgment because the officers had no "realistic opportunity" to prevent an attack committed by another officer).

Moreover, just this past summer, in *Waller v. City of Nogales*, this Court denied leave to amend a failure to intervene/intercede claim to include officers who were merely present at the scene where a suspect was shot by police. *Waller v. City of Nogales*, 4:22-CV-00244-RCC, 2023 WL 3863655, at *1 (D. Ariz. June 7, 2023). The Court concluded that it was "unlikely that these additional officers had a realistic opportunity to intercede on [the decedent's] behalf." *Id.* at *7. The Court rejected that plaintiff's argument that the additional officers were in the vicinity and equipped with radios that allowed communication with the

- 6 -

shooting officers because they did not act "in a supervisory role." *Id.*

Here, Plaintiffs maintain that Officers Ravelo, Ramirez, and Howard failed to take an "affirmative step to intervene to protect" Mr. Kirk. (Doc. 27, ¶ 299.) The allegation is insufficient to state a claim because Plaintiffs fail to explain how Ravelo, Howard, or Ramirez, all of whom were undisputedly non-shooting and/or non-present officers, could have intervened or otherwise prevented the shooting. These "non-shooting" and "non-present" officers had no "realistic opportunity" to intervene, and Plaintiffs fail to state that claim against them under Count V.

## IV. PLAINTIFFS CANNOT MAINTAIN A CLAIM FOR EXCESSIVE FORCE AGAINST DEFENDANTS WHO DID NOT USE ANY FORCE

The Fourth Amendment prohibits the unreasonable seizure of persons. U.S. Const. amend. IV. This Amendment further protects against the unreasonable use of excessive force. *Estate of Strickland v. Nev. Cty.*, 69 F.4th 614, 619 (9th Cir. 2023).[2]

In Count II, Plaintiffs allege that Phoenix Defendants, including the Defendants Ravelo, Ramirez, and Howard, used excessive force in violation of Mr. Kirk's constitutional rights. As a preliminary matter, Plaintiffs Roberts and Turner cannot maintain an excessive force claim against Defendants. *See generally Cutler v. Nanos*, 546 F. Supp. 3d 856, 865 (D. Ariz. 2021) (recognizing that Arizona's survival statute only allows the personal representative to pursue a Fourth Amendment excessive force claim on behalf of the decedent). But even if Plaintiffs Roberts and Turner could maintain this claim, the Amended Complaint fails to state an excessive force claim against Defendants Ravelo, Ramirez, and Howard.

---

[2] As a side note, in Counts II, III, and IV Plaintiffs allege that Defendants violated Mr. Kirk's Fourteenth Amendment rights by using excessive force. Because courts analyze excessive force claims exclusively under the "Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard[,]" dismissal of Plaintiffs excessive force claims is warranted, to the extent they are based on Fourteenth Amendment claim. *Graham v. Connor*, 490 U.S. 386, 388.

For Fourth Amendment purposes, the relevant inquiry is "whether the officers *employed* an 'objectively unreasonable' amount of force under the 'totality of the circumstances.'" *Estate of Strickland v. Nev. Cty.*, 69 F.4th 614, 619 (9th Cir. 2023) (quoting *Brooks v. Clark County*, 828 F.3d 910, 920, 922 (9th Cir. 2016) (emphasis added)). <u>Plaintiffs Amended Complaint does not allege any facts that Officers Ravelo, Ramirez, or Howard "employed" any force</u>. Instead, the claim appears to again be premised on allegations that these individuals "failed to intercede or intervene." (Doc. 27, ¶ 266.) But those facts, even if true, do not satisfy the standard under the Fourth Amendment. Therefore, the excessive force claim – Count II, against Defendants Ravelo, Ramirez, and Howard should be dismissed.

## V. PLAINTIFFS' GROSS NEGLIGENCE CLAIM ALSO FAILS AS TO DEFENDANTS RAVELO, RAMIREZ AND HOWARD

In Count VI, Plaintiffs allege that all Defendants were grossly negligent. As argued above, Plaintiffs Roberts and Turner cannot maintain a gross negligence claim against Defendants. Only the personal representative, Plaintiff Kashane Kirk, may maintain claims that are personal to Mr. Kirk. But even if Plaintiffs Roberts and Turner could maintain this claim, the Amended Complaint fails to state a cognizable gross negligence claim against Defendants Ravelo, Ramirez, and Howard.

To establish a claim for gross negligence, a plaintiff must establish the four elements of negligence—duty, breach, causation, and harm—plus the additional requirement that the defendant engaged in "[g]ross, willful, or wanton conduct." *Noriega v. Town of Miami*, 243 Ariz. 320, 326, ¶ 23, 407 P.3d 92, 98 (App. 2017) (quoting *Armenta v. City of Casa Grande*, 205 Ariz. 367, ¶ 20, 71 P.3d 359, 364 (App. 2003)) (alteration in original).

Here, Plaintiffs allege that the Defendants generally breached a duty to Mr. Kirk because they: (1) "fail[ed] to intercede or intervene"; (2) "used deadly and excessive force"; and (3) failed to use "non-lethal force that was readily available." (Doc. 27, ¶¶ 311, 314–

16.) As explained *ad nauseum* above, Plaintiffs do not allege Ravelo, Ramirez, or Howard used any force against Mr. Kirk. As such, Plaintiffs' gross negligence claim against these Defendants is premised entirely on the alleged failure to intervene.

Indeed, Plaintiffs do not mention Officer Ravelo at all in the paragraphs aimed at establishing gross negligence. (Doc. 27, ¶¶ 304–06.) Plaintiffs' only assertion is that "Officer Revalo did nothing to stop the actions of her fellow officers." (Doc. 27, ¶ 200.) But as argued above, Plaintiffs Amended Complaint fails to state a valid claim for failure to intervene because Defendants Ravelo, Ramirez, and Howard were non-shooting and/or non-present. Consequently, the Amended Complaint fails to state a claim for gross negligence under Count VI against Defendants Ravelo, Ramirez, and Howard.

## VI. PLAINTIFFS DO NOT PLEAD SUFFICIENT FACTS TO STATE A CLAIM FOR *MONELL* LIABILITY

In Counts III, IV, and VIII, Plaintiffs allege the City and Chief Sullivan are liable for constitutional violations under the standards set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). At the outset, again, Plaintiffs Roberts and Turner cannot maintain *Monell* claims against the City and Chief Sullivan. Plaintiffs' *Monell* claims are premised on the Fourth Amendment and Fourth Amendment rights are personal - they "may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174(1969). Consequently, only the personal representative of Mr. Kirk's estate can assert claims for *Monell* liability. Nonetheless, the Amended Complaint fails to plead the necessary facts to support Plaintiffs three *Monell* liability claims. Therefore, dismissal is warranted.

This Court recently addressed the pleading requirements for a *Monell* claim in *Andrich v. Kostas*, stating:

> A *Monell* claim may be stated against a municipality (1) when implementation of its official policies or established customs inflicts the constitutional injury, (2) for acts of omission, when such omissions amount to the local government's own official policy, or (3) when the individual who committed the

> constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it. To sufficiently plead a *Monell* claim and withstand a Rule 12(b)(6) motion to dismiss, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.

470 F. Supp. 3d 1048, 1063 (D. Ariz. 2020) (quotations omitted). Plaintiffs assert multiple theories within their *Monell* claim here.

### A. The First *Monell* Claim (Count III) Lacks Adequate Factual Support

In their "First *Monell* Claim," Plaintiffs allege the City and Chief Sullivan promulgated a long-standing policy, custom, or practice of using unnecessary excessive deadly force, thereby creating a "culture in which use of excessive force and unreasonable use of deadly force is commonplace." (Doc. 27, ¶¶ 271–80.) To qualify as a custom or practice, the activity must be persistent and widespread. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*

In *Trevino v. Gates*, the Ninth Circuit concluded that the plaintiff "failed to establish a 'custom or policy'" implemented by city council members to indemnify officers for officer involved shootings. *Id.* at 919–920. The Court reasoned that the record was "virtually devoid of any direct evidence of council indemnification prior to the shooting" and that mere "inference, conjecture and speculation . . . is not sufficient duration, frequency and consistency to constitute an actionable policy or custom." *Id.* at 919. Similarly, in *Ramirez v. Las Vegas Metropolitan Police Department*, a plaintiff asserted *Monell* claims that were premised on a policy and custom that promoted excessive force. *Ramirez v. Las Vegas Metro. Police Dept.*, 22 Fed. Appx. 828 (9th Cir. 2001). In that case, the plaintiff's complaint referenced his personal experience and news reports to support this claim. *Id.* The Ninth

- 10 -

1   Circuit concluded that this claim was "unsupported by the record" and that the "news reports
2   ha[d] virtually no probative value on the issue of whether [the police department] has a
3   municipal custom of using excessive use of force during arrests." *Id.*

4   Beyond the excessive force context, in *Sabra v. Maricopa County Community
5   College District*, a community college student alleged that his professor and the college were
6   liable under *Monell* for a widespread policy and practice of spreading islamophobia through
7   the professor's world politics class. *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867,
8   877, 884–85 (9th Cir. 2022). To support this claim, the student alleged that the professor
9   both taught the world politics course for the past twenty-four years and included an Islamic
10  terrorism module in the politics class, and thus, this module was a part of the college's
11  political science curriculum. *Id.* at 884. The Ninth Circuit upheld the professor/college's
12  motion to dismiss the *Monell* claim because the alleged facts were not specific enough to
13  establish a "persistent and widespread" custom and practice that became a part of the
14  college's "standard operating procedure." *Id.* Likewise, in *Kayser v. Whatcom County*, a
15  plaintiff's alleged custom and practice claim under *Monell* premised on the suppression of
16  evidence in violation of *Brady* was insufficient to support a *Monell* claim. *Kayser v.
17  Whatcom Cnty.*, 804 Fed. Appx. 620, 622 (9th Cir. 2020). The Ninth Circuit upheld the
18  dismissal of this claim because the plaintiff failed to allege facts that established the county
19  "suppressed evidence in any case other than his two trials." *Id.*

20  Here, Plaintiffs do not identify any specific conduct or statistics to support the
21  allegation that the City and Chief Sullivan had a custom and practice that promoted the use
22  of excessive force. Instead, Plaintiffs rely on general assertions to support their claim. (*See
23  generally* Doc. 27, ¶¶ 271–80.) For example, Plaintiffs allege that the City and Chief
24  Sullivan "provide little transparency," "release edited or redacted versions of evidence," that
25  PHXPD "has failed to adequately discipline their officers." (Doc. 27, ¶¶ 275–76, 279). But
26  these assertions are nothing more than mere "inference, conjecture, and speculation."

*Trevino*, 99 F.3d at 919. The Amended Complaint lacks specific and direct references to any "practices of sufficient duration, frequency and consistency" to support the first *Monell* claim. Therefore, there is no well-pleaded allegation of a policy or custom promoting the use of unreasonable force.

**B.     The Second *Monell* Claim (Count IV) Lacks Adequate Factual Support**

In their "Second *Monell* Claim," Plaintiffs allege the City and Chief Sullivan promulgated a long-standing policy, custom, or practice of ignoring misconduct, thereby creating "a legacy of using deadly and unlawful force" that was "established and ratified" by the City and Chief Sullivan. (Doc. 27, ¶¶ 281–295.) To state a claim under *Monell* based on ratification, a plaintiff must present facts showing that an official with final policy-making authority adopted and expressly approved of the acts of those who caused the constitutional violation. *Trevino*, 99 F.3d at 920. Failure to discipline alone is insufficient to prove ratification; there must be an affirmative act. *See Hunt v. Davis*, 749 Fed. App'x 522, 525-26 (9th Cir. 2018) ("[N]either the Supreme Court nor our circuit has established that an official's post-incident ratification of or acquiescence to a claimed constitutional violation is alone sufficient for individual liability under § 1983.").

In some respects, the Second Monell Claim merely parrots the policy and custom theory, which fails for the reasons stated above (Section VI(A), *supra*). As to the ratification theory, the Amended Complaint does not identify any <u>facts</u> indicating how, when, and where the City or Chief Sullivan adopted or affirmatively endorsed the acts that occurred <u>here</u> and does not state a *Monell* claim premised on ratification. *See Andrich*, 470 F. Supp. 3d at 1065 (dismissing complaint that failed to allege facts as to how the policymakers approved of and endorsed the actual shooting at issue and when and where the alleged endorsement occurred).

**C.     The Third *Monell* Claim (Count VIII) Lacks Adequate Factual Support**

In their "Third *Monell* Claim," Plaintiffs allege the City and Chief Sullivan have

promulgated a long-standing policy, custom, or practice of negligently hiring, training, retaining, and supervising PHXPD officers on constitutional duties. (Doc. 27, ¶¶ 325–337.) "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A plaintiff must establish three things to state a claim for inadequate training: (1) "that the existing program is inadequate; (2) "that the training policy, or lack thereof, amounts to a 'deliberate indifference' to the rights of the people with whom the officials come into contact"; and (3) "causation." *Ramirez v. Las Vegas Metro. Police Dept.*, 22 Fed. Appx. 828, 831 (9th Cir. 2001). For causation, "a plaintiff must show that the deliberate indifference on the part of the municipality actually caused the constitutional violation." *Id.* Moreover, to show deliberate indifference, the complaint must establish "a pattern of *similar* constitutional violations by untrained employees." *Connick* 563 U.S. at 61 (emphasis added).

The Amended Complaint fails to establish deliberate indifference. And as a result, the causation element fails. Plaintiffs' Amended Complaint contains only a general assertion that the City and Chief Sullivan negligently hired, trained, retained, and supervised PHXPD officers. Plaintiffs do not identify any specific fact supporting this claim. Nor do Plaintiffs state <u>facts</u> suggesting that any perceived violations by PHXPD resulted from a lack of training. Count VIII fails to state an adequate *Monell* claim premised on negligent hiring, supervision, retention, and training. *See Leibel v. City of Buckeye*, 364 F. Supp. 3d 1027, 1039 (D. Ariz. 2019) (finding plaintiff failed to state a plausible claim based on failure to train where the complaint alleged only one arguably similar constitutional violation).

In sum, none of Plaintiffs' theories based on *Monell* are adequately pled based on actual facts and those three counts must be dismissed.

**VII. PLAINTIFFS CANNOT MAINTAIN A CLAIMS UNDER THE WRONGFUL DEATH AND/OR SURVIVAL STATUTE AGAINST DEFENDANTS RAVELO, RAMIREZ, AND HOWARD**

In Count I, Plaintiffs allege both a wrongful death claim and survivorship action

1 against all Defendants, including Defendants Ravelo, Ramirez, and Howard. (Doc. 27, ¶¶
2 247–57.) Arizona's wrongful death statute provides:

> When death of a person is caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under such circumstances as amount in law to murder in the first or second degree or manslaughter.

*See* A.R.S. § 12-611, *et seq.* And the survivorship statute provides:

> Every cause of action, except a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy, shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed.

A.R.S. § 14-3110.

To support the wrongful death and survivorship action asserted in Count I, Plaintiffs allege that Defendants are liable under the above statutes because they shot Mr. Kirk and failed to intercede. (Doc 27, ¶ 252.) Additionally, Plaintiffs attempt to support this claim by alleging that Defendants were grossly negligent. But as argued above, the Amended Complaint fails to state valid claims for excessive force, failure to intervene, and gross negligence against Defendants Ravelo, Ramirez, and Howard, and there is no dispute they did not shoot Mr. Kirk. Consequently, the purported factual support for Plaintiffs' wrongful death claim and survivorship action is lacking. Thus, the wrongful death claim and survivorship action under Count I should also be dismissed as to Defendants Ravelo, Ramirez, and Howard.

/ / /
/ / /
/ / /

- 14 -

## VIII. PLAINTIFFS CANNOT RECEIVE PUNITIVE DAMAGES UNDER THE WRONFUL DEATH AND SURVIVORSHIP STATUTES BECAUSE SUCH DAMAGES ARE BARRED BY ARIZONA STATUTE

In Count I, Plaintiffs also request punitive damages. But Count I maintains state law claims under the above quoted wrongful death and survivorship statutes. Punitive damages are barred in such instances by Arizona statute: "Neither a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages." A.R.S. § 12-820.04.

## IX. DESPITE EFFORTS TO AMEND, THE FIRST AMENDED COMPLAINT STILL VIOLATES RULE 8 BECAUSE IT IS NOT "SIMPLE, CONCISE, AND DIRECT"

Federal Rule of Civil Procedure 8 outlines the bare minimum requirements that are necessary for the allegations raised in a complaint to be procedurally sufficient. Fed. R. Civ. P. 8(d). This Rule requires each allegation in a complaint be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 8 "applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)." *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996); *see also Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir.1969) (dismissal for failure to comply with Rule 8 may be *sua sponte*). Additionally, failure to make a pleading "simple, concise, and direct" may result in dismissal with prejudice. *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673–74 (9th Cir. 1981).

In *Schmidt v. Herrman*, the Ninth Circuit affirmed the district court's decision to dismiss a second amended complaint with prejudice because the pleading was "confusing, distracting, ambiguous, and unintelligible." 614 F.2d at 1224. Similarly, in *McHenry v. Renne*, the Ninth Circuit held that the district court did not abuse its discretion in dismissing a plaintiff's third amended complaint with prejudice for violation of both general pleading rules and the court's prior orders requiring a short, clear statement of claims sufficient to allow defendants to prepare their responsive pleading. *Id.* (quoting *Schmidt*, 614 F.2d at 1223).

Here, the Amended Complaint fails to meet the requirements of Rule 8. First, as highlighted in the arguments above, the Complaint does not allege short and clear statements that allow each Defendant to prepare a responsive pleading. For example, and as explained further above, Plaintiffs purport to assert claims for excessive force and battery against Defendants Ravelo, Ramirez, and Howard, each of whom did not shoot Mr. Kirk. (Doc. 27, ¶¶ 258–69, 319–24.) Plaintiffs also claim these same individuals failed to intervene, despite the fact the Defendants Ramirez and Howard were hundreds of feet in the air, and Defendant Ravelo was not involved in the shooting. (Doc. 27, ¶ 299.) Second, the Complaint contains numerous instances of speculative and argumentative language. (*See*, *e.g.*, Doc. 27, ¶¶ 30, 35, 79, 87, 123, 142, 147.)[3] For example:

- "The Phoenix Police and City's policies, patterns, and practices regarding use of force and 'active shooters' has been woefully deficient for years."
- "911 callers and witnesses give inherently skewed and flawed information."
- "Mistakes cannot happen – they are life and death decisions."
- "He had thrown his gun to the ground to avoid the very fate he suffered at the hands of the Defendants."
- "Roy was not upset by his actions."
- "Not a single officer paused for reflection."

Moreover, the Amended Complaint, from Introduction to the Prayer for Relief, fails to state the requisite "simple, concise, and direct" allegations, as required by Rule 8.

As with the other arguments above, Defendants already raised these issues with Plaintiffs' counsel, and while it was believed more or possibly all of these issues might be cured when Plaintiffs amended, they were not totally cured, as detailed herein. As such, Plaintiffs should not receive unlimited opportunities to fix their defective pleadings by filing amended complaint after amended complaint. *See generally Nevijel v. N. Coast Life Ins. Co.*,

---

[3] The cited paragraphs are just a few examples of argumentative and speculative language in the Complaint. A full review reveals numerous instances of this language.

- 16 -

651 F.2d 671 (9th Cir. 1981) (upholding the district court's dismissal with prejudice under Rule 8 when the original complaint was 48 pages long, verbose, confusing, and almost entirely conclusory, and the amended complaint was equally as verbose, confusion, and conclusory). Thus, dismissal is warranted.

## X.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint in its entirety pursuant to Rule 8, or, alternatively: (1) dismiss Defendants Ravelo, Ramirez, and Howard because Plaintiffs do not state any valid claims against them in the operative Counts I, II, V, VI, and VII; (2) dismiss Plaintiffs' *Monell* claims asserted in Counts III, IV, and VIII; (3) dismiss Plaintiffs' excessive force claims asserted in Counts II, III, and IV to the extent that they assert Fourteenth Amendment violations; (4) dismiss Plaintiffs' excessive force, *Monell liability*, failure to intervene, gross negligence, and battery claims asserted in Counts II, III, IV, V, VI, VII, and VIII to the extent they are asserted by Plaintiffs Roberts and Turner, both of whom are not the personal representative of Mr. Kirk's estate; and (5) dismiss Plaintiffs' punitive damages request under Count I.

RESPECTFULLY SUBMITTED this 3rd day of November, 2023.

BROENING OBERG WOODS & WILSON, P.C.

By: /s/ Sarah L. Barnes
　　Sarah L. Barnes
　　Kelley M. Jancaitis
　　*Attorneys for Defendants City of Phoenix, Sullivan, Ladines, Garza, Roy, Ravelo, Ramirez and Howard.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2023, I electronically transmitted the foregoing with the Clerk of the Court using the CM/ECF system for filing, with copies submitted electronically to the following recipients:

Sean A. Woods
Robert T. Mills
MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiffs*

/s/ *Kathy Lake*
_____