Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
rmills@millsandwoods.com
swoods@millsandqwoods.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Kashane Kirk; *et al.*,<br><br>            Plaintiffs,<br><br>vs.<br><br>City of Phoenix; *et al.*,<br><br>            Defendants. | Case No.: 23-00836-MTL (CDB)<br><br>**RESPONSE IN OPPOSITION TO CITY DEFENDANTS' MOTION TO DISMISS (DOC. 29)**<br><br>(*Assigned to the Honorable Michael T. Liburdi and referred to the Honorable Camille D. Bibles*) |

Through counsel undersigned, Plaintiffs respond in opposition to Defendants the CITY OF PHOENIX; MICHAEL SULLIVAN; AUTUMN LADINES; ANTONIO GARZA; ERIC ROY; JACLYN RAVELO; STEVEN RAMIREZ; and, JONATHAN HOWARD's (the "City Defendants") Motion to Dismiss (Doc. 29) (the "Motion"). The City Defendants seek dismissal of the entire complaint pursuant to Fed. R. Civ. P. 8(d) and in the alternative seek to dismiss all or portions of Plaintiffs' Count I (Wrongful Death); Count II (excessive force); Counts III, IV, and VIII (Monell Liability); Count V (duty and failure to intervene); Count VI (gross negligence); and Count VII (battery) pursuant to Fed. R. Civ. P. 12(b)(6). For the foregoing reasons, their Motion to Dismiss should be denied. This Response is supported by the following Memorandum of Points and Authorities below.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. BACKGROUND

Plaintiffs filed their initial Complaint in May 2023. Following service and agreement on a consolidated Answer date, Plaintiffs' counsel and City Defendants' counsel met and conferred to discuss City Defendants' concerns and/or objections regarding the Complaint. Plaintiffs then filed an Amended Complaint on October 25, 2023 dismissing their negligence claim and Intentional Infliction of Emotional Distress claim. Furthermore, Plaintiffs dismissed completely the following parties: Officer Makic and Jane Doe Makic; Officer Morgan Traylor and Jane Doe Traylor; Officer Reddy and Jane Doe Reddy; and, Humberto Gonzalez Rios and Jane Doe Gonzalez-Rios (the "Dismissed Parties"). Finally, Plaintiffs removed many paragraphs and portions of paragraphs that they agreed could be construed as unnecessary.

Despite Plaintiffs' efforts, the City Defendants filed their Motion. After review of the First Amended Complaint, Plaintiffs concede that each Count could be more defined as to which Plaintiff is bringing which claim. While Plaintiffs did narrow the scope as to who has standing to bring the wrongful death and survivorship claims, if this Court believes that further refinement may be necessary, Plaintiffs believe a simple amendment to the remaining claims will help delineate the claims brought by each Plaintiff. For this, Plaintiffs would respectfully request leave to Amend the First Amended Complaint an additional time.

2

## II. LEGAL STANDARD

The legal standard for Motions to Dismiss pursuant to Rule 12(b)(6) are regularly cited and well known to this Court. "[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted).

When resolving a Motion to Dismiss, a Court must accept as true all factual allegations in the complaint and construe those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Further, in the context of a motion to dismiss, the court properly resolves any doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

The probability of success at trial should not be considered, as "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (internal citation omitted). Facts plead are assumed to be true, as "Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of a complaint's factual

3

allegations." *Id*. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Consequently, motions to dismiss are disfavored and are to be granted only if there is no cognizable factual or legal basis for the claim.

### III. PLAINTIFFS' CLAIMS FOR WRONGFUL DEATH, BATTERY, AND EXCESSIVE FORCE AGAINST RAVELO, HOWARD, AND RAMIREZ

"Following the Fifth Circuit's analysis in *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989), we required 'integral participation' by each officer as a predicate to liability. *See Chuman*, 76 F.3d at 294." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). Specifically,

> "integral participation" does not require that each officer's actions themselves rise to the level of a constitutional violation. For example, in *James ex rel. James v. Sadler*, 909 F.2d 834 (5th Cir. 1990), cited with approval by *Chuman*, the court held that officers who provided armed backup during an unconstitutional search were "integral" to that search, and were therefore participants rather than mere bystanders. *Id*. at 837. Additionally, in *Melear* itself, the Fifth Circuit held that an officer who does not enter an apartment, but stands at the door, armed with his gun, while other officers conduct the search, can nevertheless be a "full, active participant" in the search. *See Melear*, 862 F.2d at 1186.

*Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004).

Applied to the facts in this case, Ravelo, Howard and Ramirez were each clearly involved with the events that led to Leontae's death. Howard and Ramirez were the very first officers on scene above in their helicopter. They reported that there was an active shooter. They started this. They were integral participants to the events of that day. In fact,

4

no bullets were ever fired by anyone in that parking lot that day – other than the City Defendants. Ravelo arrived with Ladines. They were the 3rd and 4th Officers on scene with Howard and Ramirez being the first two. Ravelo stated that she did not see a gun and she did not see a suspect that matched the description given over dispatch. (Am. Compl. ¶ 198.) Furthermore, Ravelo stated that Ladines moved her non-lethal weapon to the passenger compartment as they were heading to the scene. (Am. Compl. ¶ 196.) Ravelo clearly knew that non-lethal force could have been used, yet she, Howard, and Ramirez let their colleagues shoot lethal weapons and were directly on-scene with their colleagues. They were "integral participants" to the events of that day. *Id.*

Plaintiffs have pled allegations that show that Ravelo, Howard, and Ramirez were on scene and were integral participants. Accordingly, under *Boyd* and its progeny's reasoning, they are just as liable as the shooting officers for the untimely death of Leontae Kirk.

## IV. PLAINTIFFS CAN MAINTAIN CLAIMS FOR DUTY AND FAILURE TO INTERVENE *AND* GROSS NEGLIGENCE AGAINST OFFICERS RAVELO, RAMIREZ, AND HOWARD.

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham*, 229 F.3d at 1289 (quotations omitted) (quoting *United States v. Koon*, 34 F.3d 1416, 1447, n.25 (9th Cir. 1994)). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id*. (citation omitted). In this case, none of the events would have occurred but for Howard's and Ramirez' reporting of false information over police dispatch. They maintained visual sight lines over the event and had every opportunity to correct their misinformation. Instead, they watched as the events transpired leading to Leontae Kirk's death. Accordingly, Howard and Ramirez had an opportunity to

5

correct the information they had reported. It stands to reason that if Howard and Ramirez reported an active shooter, that the police officers on the ground that arrived later were not instantly transported to the scene. The duty and failure to intervene existed and they had every opportunity to do so, but they did not.

As to Ravelo, she arrived on scene at the exact same time as Autumn Ladines who was the first of the shooters that actually shot Leontae Kirk. Ravelo reported that there was a) a man at the bus stop who only left after her direction to leave and that b) she did not see a gun in Leontae's hand and did not even believe that Leontae matched the description, so she did not fire her weapon at Leontae. She was able to form those thoughts as soon as she arrived on scene.

Plaintiffs pled that Ravelo:

WAS UNSURE IF LEONTAE WAS THE SUBJECT OF THEIR CALL, AS HE DID NOT MATCH THE DESCRIPTION, AND SHE DID NOT SEE LEONTAE WITH A WEAPON. OFFICER RAVELO CONTINUED LOOKING AROUND FOR A HISPANIC MALE IN THE RED HOODED SWEATSHIRT.

(Am. Compl. ¶ 198.)

Plaintiffs further pled that Ravelo:

DID NOT SEE ANYONE WITH A FIREARM OTHER THAN THE POLICE, SO SHE DID NOT DISCHARGE HER WEAPON. OFFICER RAVELO RECALLED HEARING APPROXIMATELY TEN GUNSHOTS BUT NOTED THAT OFFICERS SEEMED TO BE FIRING SIMULTANEOUSLY. AFTER THE GUNFIRE ENDED, LEONTAE WAS DOWN ON THE GROUND, LYING ON HIS BACK WITH HIS HANDS DOWN BY HIS SIDES IN THE SAME VICINITY WHERE OFFICER RAVELO INITIALLY OBSERVED HIM.

(*Id.* at ¶ 199.)

She had enough time to evaluate the situation and come to the conclusion that this was not the situation as reported over dispatch – before her fellow officers began shooting. She was within earshot of Ladines and she had opportunity to tell Ladines to hold her fire

until they could confirm the reported information was accurate. She did not do this. City Defendants cite to *Cunningham* to support their argument. In that case, there were multiple officers *who were not present* when the shooting occurred. The Court further held that officers who were present but not shooting under the evidence in that case could not be held liable. The *Cunningham* case was an appeal from a District Court's denial of summary judgment as to the officers, which was overturned. The "realistic opportunity" test is highly factually intensive and should not be something that can be decided in a motion to dismiss. Plaintiffs alleged that the non-shooting officers were present and had an opportunity to intervene. At this stage, the Court must accept as true all factual allegations in the complaint and construe those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

"[T]he constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows." *Koon*, 34 F.3d at 1447 n.25, *rev'd on other grounds*, 518 U.S. 81 (1996). Officers are liable for a breach of this duty if they had a 'realistic opportunity' to intercede. *Cunningham*, 229 F.3d at 1289-90.

Moreover, liability under § 1983 extends to officers "who perform functions 'integral' to an unlawful search, even if their individual actions do not themselves rise to the level of a constitutional violation." *Bravo v. City of Santa Maria*, 665 F.3d 1076 (9th Cir. 2011). Officers that provide armed backup during an unconstitutional search are integral to that search. *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004) (each officer involved in the search operation was an integral participant).

A party is grossly negligent

> 'if he acts or fails to act when he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to other but also involves a high probability that substantial harm will result.' *Walls v. Ariz. Dept. of Pub. Safety*, 826 P.2d

7

1217, 1221 (Ariz. App. 1991) (citing *Nichols v. Baker*, 416 P.2d 584, 586 (Ariz. 1996)).

*Waller v. City of Nogales*, 4:22-CV-00244-RCC, at *4 (D. Ariz. June 6, 2023).

Plaintiffs pled that Ravelo, Howard, and Ramirez had every opportunity to correct the misinformation regarding an active shooter. Because of their failure to act, they are just as liable as the officers who shot Leontae. Furthermore, the City Defendants also cite to *Waller* for the proposition that officers need a realistic opportunity to intercede. They seem to rely on this case as dispositive to Plaintiffs claims. However, in the *Waller* matter, the Plaintiff's complaint or the proposed amendments to the complaint did not make any specific allegations regarding the non-shooting officers' actions. The Court held that "Nor are any individual actions of these officers detailed in the amendment." *Waller v. City of Nogales*, 4:22-CV-00244-RCC, at *11 (D. Ariz. June 6, 2023). This case is different. Here, Plaintiffs have alleged extensively the actions and inactions undertaken by Ravelo, Howard, and Ramirez. Accordingly, the claims for gross negligence and failure to intervene against Howard, Ramirez, and Ravelo should not be dismissed.

## V. PLAINTIFFS PLED SUFFICIENT FACTS TO STATE A CLAIM FOR *MONELL* LIABILITY.

The City's Mayor Kate Gallego was recently interviewed for an article by the Phoenix New Times in reference to an approximately five and a half (5.5) million-dollar settlement paid by the City for another civilian death at the hands of City of Phoenix officers occurring in September 2022, around the same time as Leontae's death. Gallego concedes that the Phoenix Police Department's policies were deficient and is quoted in the article:

8

> Mayor Kate Gallego, who voted in favor of the settlement, called Osman's death a "tragic loss" but said the police department learned from its use of force.
>
> "It (the settlement) does not bring him back, but that lesson learned will save lives to come," Gallego told Phoenix New Times on Thursday at an event kicking off renovations at the police department's future headquarters. "*The problem was at a policy level. We did not have the right policies guiding how to respond, so we have dramatically changed what we would do today.*"

*See* article at https://www.phoenixnewtimes.com/news/phoenix-to-pay-55-million-to-family-of-man-killed-by-police-17469685 as viewed on November 17, 2023 (emphasis added).[1]

Chief of Phoenix Police and fellow Defendant Sullivan also had this to say in regards to the same matter:

> "One of my primary focuses since joining the Phoenix Police Department is for the agency to focus on de-escalation and continuous improvement," Sullivan said. "We have implemented the use of nonlethal tools, provided training for officers regarding next-level de-escalation, provided training regarding proactive intervention, and *we are nearing the completion of revising our use-of-force policies*."

*Id*. (emphasis added).

---

[1] "In general, it is permissible for a Court to consider judicially noticeable materials when ruling on a Rule 12(b)(6) motion to dismiss." *ACI Law Grp. v. ACI Law Grp.*, No. CV-21-00098-PHX-DWL, at *15-16 (D. Ariz. Sep. 20, 2021) (citing *Mullis v. U.S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1388 (9th Cir. 1987)). "'In general, websites and their contents may be judicially noticed." *Id.* at *16 (quoting *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F.Supp.3d 139, 146 (N.D. Cal. 2020)). "[W]ebsites may be judicially noticed for their existence and content (*e.g.*, the fact that they contain what they contain) but not for the truth of any disputed facts asserted therein." *Id.* Here, the Court may take judicial notice of the linked website that contains the article that includes the statements by Gallego and Sullivan. Moreover, because it is not disputed that Gallego and Sullivan made the quoted statements, the Court may take judicial notice of the fact that they actually made them.

9

Defendants argue that Plaintiffs have failed to state *Monell* claims against the City in three (3) respects: 1) official policies; 2) customs or practices, and; 3) negligent hiring and training. As the above quotes, and Plaintiffs' Amended Complaint clearly demonstrate, that argument is wholly without merit – especially for a Motion to Dismiss.

In regards to 1) official policies, Mayor Gallego's statement excerpted above that Osman's death on September 25 2022, thirty-eight (38) days prior to Kirk's death, was due to problems "at a policy level. [The City] did not have the right policies," by itself, completely forecloses Defendants' argument. In addition, Defendant Sullivan's statement that Phoenix police are still in the process of revising, and have yet to complete revising, their use of force policies, shows that the City is aware that its official policies were deficient at the time of Leontae's death (and remain deficient).

Moreover, the Amended Complaint alleges that "just nineteen (19) days after the fatal shooting of Leontae, Chief Sullivan presented a four-pronged plan to fix the failings of his predecessors and the City's woefully deficient policies and training programs regarding the use of force, including deadly force." (Am. Compl. ¶ 49; *see also id.* ¶ 38.) The City's use of force policy was not updated until January 2023. (*See id.* ¶ 34.) Obviously, taking action to revise the City's policies regarding use of force so soon after Leontae's death shows that those policies were deficient in the first place and lead to unnecessary deaths like Leontae's. Clearly, dismissal of Plaintiffs' Monell claims is inappropriate with regard to Plaintiffs' claims of official City policies at this stage.

With regard to 2) customs or practices, and in addition to the Gallego and Sullivan statements excerpted above, Plaintiffs have alleged that "[s]ince 2015," the City has had

"at minimum *eighty-eight (88) officer involved shootings that resulted in the fatalities* of the suspect. Fifty-three (53) of those fatalities were black individuals." (*See id.* ¶ 47 (emphasis added).)[2] Moreover, Plaintiffs have alleged that the U.S. Department of Justice is currently undertaking a "pattern or practice investigation" into the City Police Department, in particular to assess the Department's use of force, including deadly force. (*See id.* ¶ 28.) Clearly, Plaintiffs have sufficiently alleged facts regarding the City's customs or practices to overcome dismissal at this stage.

Finally, with regard to 3) negligent hiring and training, Defendant Sullivan's excerpted quote above that the City has "provided training for officers regarding next-level de-escalation[] [and] provided training regarding proactive intervention" shows that the City is aware that its training of officers was and remains deficient. Moreover, Plaintiffs have alleged that after Leontae's death the City made plans to update its use of force polices. (*See id.* ¶ 49.) Among other things, the planned update involved "[r]einforc[ing] patrol briefing training on time, distance, and cover; [i]mplement[ing] scenario-based training on de-escalation; … and, [e]xpand[ing] the training on less-lethal tools. (*Id.* ¶ 50.) Clearly, planning revisions to policies in regards to officer training shows again that the City is aware that its training of officers at the time of Leontae's death was deficient.

---

[2] Defendants make the confusing assertion that Plaintiffs have not provided statistics to support the *Monell* claims. Along with the preceding statistics, Plaintiffs also pled that Chief Michael Sullivan stated that "An expansion of the Department's less lethal program is underway. Starting this week, and for the following four weeks, 12 officers per week will be trained on less lethal tools, specifically the PepperBall. This tool allows law enforcement the ability to disable or deter threats, resolve situations without lethal force, and accomplish missions while preserving life. The goal is to equip an additional 400 officers with less lethal options before the end of 2023, 200 PepperBall devices and 200 40mm impact launchers." (Am. Compl. ¶ 52.)

11

Dismissal at this stage is not merited on Plaintiffs' *Monell* claims with respect to negligent hiring and training.

## VI.     PLAINTIFFS' COMPLAINT DOES NOT VIOLATE RULE 8(d)

The City Defendants request an extreme remedy of full dismissal of Plaintiff's Amended Complaint because – in their minds – the Amended Complaint is violative of Fed. R. Civ. P. 8(d). This should not be granted. Rule 8(d) states:

> (d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.
>
> (1) In General. Each allegation must be simple, concise, and direct. No technical form is required.
>
> (2) Alternative Statements of a Claim or Defense. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
>
> (3) Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency.

Plaintiffs have met the requirements under this rule. This is not a simple case. It is highly technical and complex. Leontae Kirk's Constitutional rights were not simply violated in the sense that he was not read his Miranda Rights at a traffic stop or that his free speech was curtailed. Instead, Leontae was killed at the hands of Defendants. A case like this is one that is subject to intense scrutiny because of highly fact-intensive inquiries under doctrines including without limitation Qualified Immunity. Without very specific facts pled in great detail, the Court would be faced with the prospect of not having enough information to properly evaluate Plaintiff's allegations – allegations based on actual documentary evidence. Plaintiffs recognize that the Amended Complaint is verbose, but Plaintiffs need to meet their duty to provide this Court with the factual allegations supporting their claims. That is, in fact, what Plaintiffs have done.

In their Motion, the City Defendants cite to Doc. 27 ¶¶ 30, 35, 79. 87, 123, 142, and 147 as examples to support their request to dismiss this case under Fed. R. Civ. P. 8(d). They further state in FN3 that "The cited paragraphs are just a few examples of argumentative and speculative language in the Complaint. A full review reveals numerous instances of this language." Yet, despite claiming that there are numerous instances, they fail to point out what those instances are.

Plaintiffs amended their original Complaint following a meet and confer between counsel for Plaintiffs and counsel for City Defendants. Plaintiffs made substantial changes to remove argumentative or speculative changes. Plaintiffs also agreed to hone in on the Defendants that Plaintiffs believe are liable for the claims in the Amended Complaint. To wit, Plaintiffs dismissed completely the Dismissed Parties. Plaintiffs further removed the following from the original Complaint:

- **It serves as the City's and the Police Department's *mea culpa***
- **It is a travesty beyond comprehension**
- **This is not a simple mistake that can be brushed aside**
- **Bad information is bad information**
- **This is why police must approach a situation such as this with caution**
- **"cowboy"**
- **Was Roy upset by his actions? Not at all. [City Defendants complain that this allegation was changed to "Roy was not upset by his actions"**
- **This is not a case of simple neglect**
- **It begs the question that if weapons had been fired, why did the person at the bus stop stay and not run for cover?**
- **There is no other possible explanation**
- **This could not be further from the truth. Leontae was dying.**
- **Likely realized how much of a mistake they had made and they…**
- **If they were available, they should…**

City Defendants argue that Plaintiffs should not receive unlimited opportunities to "fix their defective pleadings by filing amended complaint after amended complaint." (Mot. at 16.) They cite generally to *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981) for support of that argument. Plaintiffs in this case have amended their

13

complaint one time. This case has been pending for 6 months – including the original filing, service of process, the extensions granted, and the organization required to allow for a unified answer date. In that time, both Defendants' counsel and Plaintiffs' counsel had pre-planned family trips necessitating a juggling of deadlines. Plaintiffs have accommodated schedules, and have filed one Amended Complaint addressing City Defendants' objections.

In contrast, the *Nevijel* Plaintiff's complaint was "filed in November 1976, was verbose, confusing and almost entirely conclusory. It consisted of 48 pages with 14 pages of addenda and 9 pages of exhibits." *Id. at* 674 (9th Cir. 1981). Furthermore, in *Nevijel*, Defendants filed a Motion to Dismiss immediately and Plaintiff waited "19 months" to file a response. *Id.* Plaintiff in that case did not request additional time. Finally, "[t]he second complaint was 23 pages long with 24 pages of addenda, named additional defendants without leave of court, and was equally as verbose, confusing and conclusory as the initial complaint. The court did not dismiss with prejudice until after appellants had submitted briefs supporting a motion to alter the judgment and a motion for permission to file a second amended complaint." *Id.*

None of that is true in this case. Plaintiffs have not crafted a confusing or conclusory Amended Complaint. Plaintiffs in this case did not attach numerous exhibits or create an addenda at all – let alone 24 pages worth. Plaintiffs' introduction to the Amended Complaint is less than 1 page long. Plaintiffs Background section is a little over 7 pages long. This is because Plaintiffs needed to set the groundwork for the long history of use of excessive force by the Phoenix Police Department, as well as the United States Department of Justice's investigation into the same. Had Plaintiffs just said that the Phoenix Police Department has a long-standing history of use of excessive force with no factual underpinning, this Court would not have the proper information to understand the basis of Plaintiffs' *Monell* claims.

14

Plaintiffs Amended Complaint is 43 pages long, of which 41 pages are substantive. As discussed above, 8 of those 41 pages are related to background information and a short introduction to the basics of the Amended Complaint. The additional 31 pages are needed to layout not only the facts of what occurred, but also to plead enough facts to establish a prima facie case for *Monell Liability*. Furthermore, City Defendants' police reports were extensive. The Investigative Reports created by the City Defendants' employees were also just as – if not more – extensive. To demonstrate that Plaintiffs have actual factual support for their allegations, Plaintiffs include *exact* quotes from reports and statements made by City Defendants totaling approximately 7 pages.

Of the remaining 26 pages of the Amended Complaint, 9 pages are dedicated to the actual counts against the Defendants. Plaintiffs painstakingly crafted the allegations in the Amended Complaint to provide the full picture with factual support of the events that occurred on the day Leontae was killed. It is not astonishing that when a person dies at the hands of police officers, that there are voluminous records associated with the incident.

Finally, as discussed herein, Plaintiffs agreed to and did dismiss certain parties to narrow the scope of the claims and parties.

There are less drastic alternatives to a dismissal with prejudice. While the Federal Rules have changed slightly since the *Nevijel* case was decided in 1981, the case is still instructive:

> These less drastic alternatives include allowing further amended complaints, allowing additional time, or insisting that appellant associate experienced counsel. "Courts have been reluctant to impose the ultimate sanction of dismissal with prejudice" because rule 41(b) is a harsh remedy, and "sometimes the fault lies with the attorney rather than the litigant." *Schmidt v. Herrmann*, supra at 1223; *Industrial Building Materials, Inc. v. Interchemical Corp.*, supra; *Flaksa v. Little River Marine Const. Co.*,389 F.2d 885 (5th Cir.), *cert. denied*, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968); *Von Poppenheim v. Portland Boxing and Wrestling Comm.,* supra. It is clear, though, that aggravated circumstances may make dismissal with prejudice under rule 41(b) appropriate. *Schmidt v. Herrmann, supra;*

*Von Poppenheim v. Portland Boxing and Wrestling Comm., supra; Agnew v. Moody, supra;* and *Corcoran v. Yorty, supra*.

*Nevijel v. North Coast Life Ins. Co.,* 651 F.2d 671, 674 (9th Cir. 1981).

## VII. CONCLUSION

The City Defendants' Motion to Dismiss should be denied in its entirety. The City Defendants seem to argue that Plaintiff did not plead *enough* facts to survive dismissal of certain claims such as the *Monell* claims as discussed herein on the one hand, but then shift to the argument that Plaintiffs have pled *too much* to be appropriate under Rule 8. The simple fact is that Plaintiffs are required to layout their claims coherently and cogently. In a case as factually intensive as this one involving the death of an unarmed civilian at the hands of Police Officers, Plaintiffs must provide the factual underpinnings to their claims. Otherwise, Plaintiffs would be required to write an entirely conclusory complaint that on its face would be deficient.

However, if this Court determines that Plaintiffs' Amended Complaint needs further refinement, Plaintiffs respectfully request further leave to amend the operative complaint in this matter.

**RESPECTFULLY SUBMITTED** this 17th day of November 2023.

**MILLS + WOODS LAW, PLLC**

By  */s/ Sean A. Woods*
    Robert T. Mills
    Sean A. Woods
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014
    *Attorneys for Plaintiff*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2023, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Sarah L. Barnes
Kelley M. Jancaitis
slb@bowwlaw.com
kel@bowwlaw.com
kmj@bowwlaw.com
mjk@bowwlaw.com
**BROENING OBERG WOODS & WILSON, P.C.**
2800 N Central, 16th Floor
Phoenix, AZ 85004
*Attorney for Defendants City of Phoenix, Sullivan, Ladines, Garza, Roy, Ravelo, Ramirez, and Howard*

        /s/ Ben Dangerfield