LAW OFFICES
BROENING OBERG WOODS & WILSON
PROFESSIONAL CORPORATION
2800 NORTH CENTRAL, 16TH FLOOR
PHOENIX, AZ 85004
(602) 271-7700
Sarah L. Barnes /Bar No. 020362
Kelley M. Jancaitis /Bar No. 025555
E-mail: slb@bowwlaw.com
kel@bowwlaw.com
kmj@bowwlaw.com
mjk@bowwlaw.com
*Attorneys for Defendants City of Phoenix, Sullivan, Ladines, Garza, Roy, Ravelo, Ramirez and Howard*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Kashane Kirk, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> City of Phoenix, *et al.*, <br><br> Defendants. | Case No. CV 23-00836-MTL (CDB) <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) & RULE 8(d)** <br><br> **(Oral Argument Requested)** |

Defendants City of Phoenix, Michael Sullivan, Autumn Ladines, Antonio Garza, Eric Roy, Jaclyn Ravelo, Steven Ramirez, and Jonathan Howard (collectively referred to hereinafter as "Defendants"), by and through counsel undersigned, hereby file this Reply to Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Response") [Doc. 30].[1]

This Reply is supported by Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) & Rule 8(d) [Doc. 29], Plaintiffs' Amended Complaint [Doc. 27], and the entire

---

[1] Defendants' Motion to Dismiss inadvertently referenced "Phoenix Police Department" as one of the Defendants in this matter; the Phoenix Police Department has not been named as a Defendant in this lawsuit and is thus not a moving Defendant herein.

record before the Court.

At the outset, Plaintiffs' Response fails to respond to two arguments raised in Defendants' Motion. First, Defendants' Motion argued that Plaintiffs Roberts and Turner could not maintain a claim for battery, excessive force, *Monell* liability, failure to intervene, gross negligence, and battery asserted in Counts II, III, IV, V, VI, VII, and VIII. [Doc. 29, at 4:23-5:9, 5:24-6:1, 7:15-20, 8:12-15, 9:14-18.] Second, Plaintiffs cannot recover punitive damages under the wrongful death and survivorship statutes because such damages are barred by Arizona statute. [Doc 29, at 15.] "Failure to respond to arguments raised in dispositive motions 'may be deemed a consent to the . . . granting of the motion." *Hall v. Shinseki*, CV-09-0837-PHX-FJM, 2010 WL 1268134, at *2 (D. Ariz. Mar. 30, 2010) (quoting LRCiv 7.2(i)) (granting portions of a motion to dismiss that the plaintiff failed to respond to). As such, Defendants' Motion to Dismiss as to these two positions should be summarily granted. The Motion to Dismiss should also be granted in its entirety because Plaintiffs' other attempts to refute the Motion are not credible nor credibly supported, as explained further below.

**I.    PLAINTIFFS' RELIANCE ON THE INTEGRAL PARTICIPATION DOCTRINE TO JUSTIFY THEIR WRONGFUL DEATH, BATTERY, AND EXCESSIVE FORCE CLAIMS AGAINST OFFICERS RAVELO, HOWARD, AND RAMIREZ IS MISPLACED**

Plaintiffs' Response argues that the wrongful death, battery, and excessive force claims against Officers Ravelo, Howard, and Ramirez are sufficient because those individuals were "integral participants to the events" surrounding Kirk's death. [Doc 30, at 4-5.][2] To support this argument, Plaintiffs rely on *Boyd v. Benton County*, 374 F.3d 773 (9th Cir. 2004). In *Boyd*, a SWAT team huddled outside of the door to an apartment unit,

---

[2] Plaintiffs' Response fails to explain how the "integral participation" doctrine applies to their wrongful death and battery claims. Defendants are unaware of any case law that extends this doctrine beyond the context of a constitutional violation. Because Plaintiffs' wrongful death and battery claims are premised on state law, their reliance on *Boyd* to support such claims is misplaced.

- 2 -

while one member deployed a flash bang device upon entry into an apartment, and an individual sleeping on the floor by the front door was injured when the flash bang was used. 374 F.3d at 777-78. The Ninth Circuit held that each SWAT team member involved in the raid was an integral participant. *Id.* At 780. This holding was supported by the following facts: each officer stood armed behind the officer that used the flash bang; each officer "participated in the search in some meaningful way;" and third, and most vitally, "every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed." *Id.*

Later Ninth Circuit case law developed the integral participation doctrine utilized in *Boyd*. In *Peck v. Montoya*, the Ninth Circuit recognized that liability under this doctrine arises in two scenarios: (1) "the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation;" or (2) "the defendant 'set[s] in motion a series of acts by others which [the defendant] knows or reasonably should know would cause others to inflict the constitutional injury.'" *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)) (alterations in original). The *Peck* court recognized that the *Boyd* decision is illustrative of the first scenario, which is rather limited. *Id.* Specifically, "simply being present at the scene does not demonstrate that an officer has acted as part of a common plan" under *Boyd*. *Id*; *see also Hopkins v. Bonvicino,* 573 F.3d 752, 770 (9th Cir. 2009) (recognizing that *Boyd* does not extend to an officer who conducts an interview in front of a house while other officers conduct an unconstitutional search inside of the house because the interviewing officer neither planned nor conducted the search). Here, Plaintiffs' reliance on *Boyd* is misplaced.

First, unlike the situation in *Boyd*, Defendants Ravelo, Ramirez, and Howard were not huddled behind the officers that deployed lethal force. Officers Ramirez and Howard were hundreds of feet in the air. And Officer Ravelo is not alleged to be huddled behind or

even near the officers who shot at Kirk. Second, Officers Ravelo, Ramirez, and Howard were not participants in a search. Unlike the injured party in *Boyd*, who was injured during the search of an apartment, Kirk was shot in a public parking lot while he was seen waiving and pointing a gun in the air. And finally, unlike the officers in *Boyd*, who knew of and did not object to the use of a flash bang, Officers Ravelo, Ramirez, and Howard were not aware of the other officer's decision to use lethal force. Plaintiffs argue that Officer Ravelo stated she did not see Kirk wielding a gun and that prior to arriving on scene, she saw Officer Ladines move a non-lethal weapon to the passenger compartment. Plaintiffs fail to show how either of these alleged facts, even if true, establish that Officer Ravelo knew or even had reason to know that another officer was going to deploy lethal force and/or that she supported the use of lethal force by other officers. Moreover, Officers Ramirez and Howard had no opportunity to object to and/or prevent the use of lethal force.

While Plaintiffs' integral participation theory focuses solely on the first instance identified in *Boyd* – knowledge and acquiescence in the constitutionally defective conduct as part of a common plan, Defendants will also address the second instance, namely, that a defendant's conduct sets in motion the series of acts by others that the defendant knows or reasonably should have known would cause the constitutional violation. *Peck,* 51 F.4th at 889. Applying these principles, the *Peck* court held that non-shooting officers, who were both armed and surrounding a house where a suspect was shot, were not integral participants to a constitutional violation because they neither "form[ed] a plan to shoot" (the first instance under *Boyd*), nor "set in motion acts" that "cause[d] a constitutional violation" (the second instance). *Id.* at 892. Similarly, in a recent unpublished decision, *Lane v. City of Mesa*, this Court concluded that the only integral participants to a constitutional violation that resulted in the death of a passenger to a stopped motor vehicle were those officers that actually shot at the vehicle. *Lane v. City of Mesa*, CV-19-00852-PHX-SMB, 2021 WL 11650853, at *13 (D. Ariz. Nov. 9, 2021). It is worth noting that the

officers discovered that none of the occupants in the vehicle were armed. *Id.* at *2.

Here, the alleged facts in Plaintiffs' Amended Complaint fail to establish claims for wrongful death, battery, and excessive force against Officers Ravelo, Ramirez, and Howard. While Officers Ramirez and Howard relayed an active shooter message to dispatch, Plaintiffs fail to explain how this conduct caused the alleged constitutional violation to occur, nor how Officers Ramirez or Howard knew or should have reasonably known that the other officers would deploy lethal force resulting in an alleged constitutional violation. Additionally, Officers Ravelo, Howard and Ramirez were non-shooting officers, and Officer Ravelo was merely present at the time Kirk was shot; Officers Howard and Ramirez were not present, as they were multiple feet above the scene in a helicopter. As such, Plaintiffs fail to allege any facts to establish that Defendants Ravelo, Ramirez, and Howard were "integral participants" in the shooting of Kirk.

**II.　PLAINTIFFS' RESPONSE FAILS TO IDENTIFY SUFFICIENT FACTS IN THEIR AMENDED COMPLAINT TO SUPPORT THEIR CLAIMS AGAINST OFFICERS RAVELO, RAMIREZ, AND HOWARD FOR BOTH FAILURE TO INTERVENE AND GROSS NEGLIGENCE**

Plaintiffs' Response maintains that their duty and failure to intervene and gross negligence claims against Officers Ravelo, Ramirez, and Howard are sufficiently pled. [Doc. 30, at 5-8.] Yet to support this argument, Plaintiffs initially cite *Cunningham*, which actually stands for the proposition that "officers can be held liable for failing to intercede ***only if they had an opportunity to intercede.***" *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (emphasis added). And then without any credible explanation as to how that proposition of law might possibly apply to these three officers to state a claim against them for failure to intervene, Plaintiffs simply then assert that the Court "must accept as true all factual allegations in the complaint and construe those allegations … in the light most favorable to the plaintiff." [Doc. 30, at 7.] It is not surprising Plaintiffs have no explanation, because applying the holding from *Cunningham* to the facts alleged in the

- 5 -

Amended Complaint actually advances Defendants' position, namely, that Plaintiffs wholly fail to state a claim against Officers Ravelo, Ramirez, and Howard for failure to intervene.

In their Amended Complaint, Plaintiffs allege that the officers who arrived on the scene did not "announce[] their presence", nor "attempt[] to contact Leontae", and they used lethal force "[w]ithout warning." [Doc. 27 ¶¶ 119, 126-27.] Taking these allegations as true, Officer Ravelo would not have had an any "opportunity to intercede" because, according to Plaintiffs' own allegations there was no indication that the use of force was imminent. *Cunningham*, 229 F.3d at 1289. In fact, Plaintiffs' Response maintains that Officer Ravelo did not believe Kirk was the individual they were looking for and she did not see a gun in his hand. [Doc. 30, at 6.] Based on these additional allegations, Plaintiffs are actually further acknowledging Officer Ravelo would not have reasonably believed there was something she could or should do to intervene in those moments. Further, Plaintiffs Response fails to adequately explain how Officers Ramirez and Howard could have intervened. Like Officer Ravelo, Officers Ramirez and Howard had no indication that the officers on the ground would use lethal force, but even if they had such indication, there is certainly no feasible action they could have taken from the hovering helicopter and certainly no action in time to actually effectuate an intervention. In fact, accepting Plaintiffs' argument would extend liability to any officer that arrives on the scene— whether on the ground or hundreds of feet in the air—before or even at the same time lethal force is deployed, even if those officers had no indication that another officer intended to use such force and no opportunity to intervene.

Next, Plaintiffs maintain that "liability under § 1983 extends to officers 'who perform functions "integral" to an unlawful search, even if their individual actions do not themselves rise to the level of a constitutional violation" in an apparent attempt to further support the failure to intervene claim. [Doc. 30, at 7.] In support of this argument, Plaintiffs

again cite *Boyd,* 374 F.3d at 780, as well as *Bravo v. City of Santa Maria*, 665 F.3d 1076 (9th Cir. 2011). But both cases—as already explained above as to *Boyd—*involve a SWAT team's nighttime search of a home. In contrast, this case involves the unplanned use of force in a public parking lot, in broad daylight, in front of a strip mall and a suspected active shooter. *Bravo,* like *Boyd* (as further explained above), is not a credible comparison nor support for the claim that Officers Ravelo, Ramirez, and Howard failed to intervene; the integral participation doctrine does not apply to the conduct of Officers Ravelo, Ramirez, and Howard in regard to this claim either.

As a final point, Plaintiffs devote very little argument to the gross negligence claim against Officers Ravelo, Ramirez, and Howard, which is also subject to Defendants' Motion to Dismiss.[3] [Doc. 30, at 7-8.] Defendants anticipate that this is because Plaintiffs' gross negligence claim is indeed meant to be premised solely on these officers' alleged failure to intervene. And as already demonstrated above and in Defendants' Motion to Dismiss, because Plaintiffs fail to state a cognizable claim for duty/failure to intervene against Defendants Ravelo, Ramirez, and Howard, dismissal of the gross negligence claim against these individuals is also warranted.

**III.  PLAINTIFFS' RESPONSE FURTHER FAILS TO IDENTIFY SUFFICIENTLY PLED FACTS TO PERMIT THEIR *MONELL* CLAIMS**

Plaintiffs do not dispute any of the legal principles asserted in the Motion. It is

---

[3] After citing to the gross negligence standard, Plaintiffs' Response, without a single citation to a factual assertion in the Amended Complaint, maintains that "Plaintiffs pled that Ravelo, Howard, and Ramirez had every opportunity to correct the misinformation regarding the active shooter." [Doc. 30, at 8.] But after review of Plaintiffs' still voluminous Amended Complaint, Defendants could not identify a single allegation that supports this position. The only allegations pled that Plaintiffs might have pointed to if they had attempted to support this assertion, are nothing more than the sweeping conclusions of counsel, that "Phoenix Officers" (again lumping them all together) failed to intervene; Officer Ravello did nothing to stop the actions of fellow officers (who, again, Plaintiffs allege fired their weapons without warning or pause); and helicopter officers were mistaken and "kicked off a fracas" with "wrong" information. [Doc. 27, ¶¶ 72-84, 119, 147, 196-201, 299, 311.] These conclusions do not amount to specific allegations of actions that would support a claim for gross negligence as to these three officers.

- 7 -

undisputed that an adequately pled *Monell* claim requires *specific* facts establishing "practices of sufficient duration, frequency and consistency" such that it can be inferred that "the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 877, 884-85 (9th Cir. 2022). Similarity is essential. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Mere "inference, conjecture and speculation" are insufficient, *Trevino*, 99 F.3d at 919, and "news reports have virtually no probative value on the issue of whether [a police department] has a municipal custom of using excessive force," *Ramirez v. Las Vegas Metro. Police Dep't*, 22 Fed. Appx. 828 (9th Cir. 2001).

Nonetheless, and despite having been notified of the City's forthcoming challenge to the adequacy of the complaint and given time to correct the issue, Plaintiffs are content to rely entirely on four broad-sweeping and non-specific "facts" to support their *Monell* claims. [Doc. 30 , at 8-12.] Yet, some of the referenced "facts" are pulled from outside the Amended Complaint itself; Plaintiff cites just seven (7) of the FAC's 338 paragraphs to supply the others. Regardless, whether considered individually or collectively, the statements are facially insufficient to place the City on notice of any specific policy, practice, or training deficiency. Each "fact" is addressed below.

Fact 1: Since 2015, there have been 88 PPD-officer-involved fatal shootings, 53 of which involved black suspects. [Doc. 27, ¶ 47] Plaintiffs do not provide any information about those incidents. There is no allegation or suggestion that any of those instances involved excessive force or resulted from any policy violation or training deficiency. Moreover, this Court has already held that a raw number of police-involved shootings does not establish a pattern of constitutional violations. *Andrich v. Kostas*, 470 F. Supp. 3d 1048, 1064 (D. Ariz. 2020), *aff'd*, 2023 WL 6157407 (9th Cir. Sept. 21, 2023); *see also Johnson v. City of Vallejo*, 99 F. Supp. 3d 1212, 1222 (E.D. Cal. 2015) (rejecting *Monell* claim founded on allegation of other officer-involved shootings because "there is insufficient

evidence that any of the other shootings by police resulted in constitutional violations").

Fact 2: In 2021, the U.S. Department of Justice "opened a pattern or practice investigation" into all aspects of PPD's law enforcement practices. [Doc. 27, ¶ 28] Per Plaintiffs, USDOJ has offered suggestions but made no finding that PPD's policies and practices were improper or otherwise constitutionally deficient. [Doc. 27, ¶ 29.] "[I]nvestigations, without reported results, are insufficient to establish a *Monell* claim." *Jones v. City of Mount Vernon*, 2023 WL 2118026, at *8 (S.D.N.Y. Feb. 17, 2023); *see also Roman v. City of Mount Vernon*, 2022 WL 2819459, at *22 (S.D.N.Y. July 19, 2022) (rejecting *Monell* claim founded on attorney general request for investigation and DOJ response thereto because "neither substantiates wrongdoing of some kind").

Fact 3: City of Phoenix Mayor Kate Gallego told a Phoenix newspaper one time, regarding one "civilian death at the hands of City of Phoenix officers" (the details of which are not provided[4]): "The problem was at a policy level. We did not have the right policies guiding how to respond, so we have dramatically changed what we would do today." [Doc. 30, at 9.] Even if evidence of subsequent remedial measures was admissible or relevant to the City's culpability (and it is not, Fed. R. Evid. 407), and the report were sufficiently specific to put the City on notice of the nature of the purported unconstitutional policy (and it is not), after-the-fact statements from a mayor do not show either a causal connection between the official and the alleged unconstitutional conduct, or ratification, sufficient to sustain a *Monell* claim. *See Smith v. City of San Diego*, 2021 WL 2072385, at *5 & *6 n.4 (S.D. Cal. May 24, 2021); *Hunt v. Davis*, 749 Fed. App'x 522, 525-26 (9th Cir. 2018) ("[N]either the Supreme Court nor our circuit has established that an official's post-incident ratification of or acquiescence to a claimed constitutional violation is alone

---

[4] Even if Plaintiffs had pled facts establishing some similarity between the two incidents, they are insufficient to establish a pattern. *E.g., Meehan v. Cnty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (two unconstitutional assaults occurring three months apart did not show custom or practice under *Monell*).

sufficient for individual liability under § 1983.").

Fact 4: Since September 2022, Chief Sullivan has been working to update and improve the policies and training regarding use of nonlethal intervention and de-escalation techniques.[5] [Doc. 27, ¶¶ 34, 38, 49, 50, 52] The updates are again irrelevant after-the-fact information and inadmissible on the issue of liability. Regardless, the allegations do not create an inference of improper policies. According to the Amended Complaint and Plaintiffs' cited source, Chief Sullivan's goal is not mere constitutionality, but rather "to ensure Phoenix PD has the gold standard in law enforcement policies," provide "next-level" training, and "constantly look at ways to get better and do better." [Doc. 27, ¶¶ 49, 51.] It cannot reasonably be inferred from these statements and efforts regarding next-level training and constant improvement that the existing policies were so deficient as to violate the Constitution. If anything, the existence of such efforts contradicts a theory that the City knew about, ratified, and/or allowed a pattern or practice of unconstitutional activity. *Cf. Seever v. City of Modesto*, 2022 WL 17418355, at \*7 (E.D. Cal. Dec. 5, 2022) (noting that *failure* to take remedial action would support a *Monell* custom or practice claim).

Despite Plaintiffs' best efforts and previous attempt to amend, the Amended Complaint does not contain *specific facts* upon which a jury could infer the pattern or practice necessary to establish municipal liability. There is no City-wide policy or practice or endorsement, whether express or implied. Thus, Counts III, IV, and VIII should be dismissed outright.

### IV. DISMISSAL AND/OR FURTHER AMENDMENT (AT A MINIMUM) IS COMPELLED BY RULE 8

Plaintiffs' Response admits that certain deficiencies still exist in the First Amended Complaint and that additional amendment may be necessary. (Doc. 30, at 2:16-25.)

---

[5] Plaintiffs' conclusory allegation that the existing policies were "woefully deficient" is not well-plead and must be disregarded in the Court's analysis. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (conclusory statements cannot substitute for facts).

Plaintiffs also admit that the Amended Complaint is verbose. (Doc. 30, at 12:26.) Plaintiffs further and confusingly maintain that Defendants fail to identify additional instances of argumentative language ***beyond those identified in Defendants Motion to Dismiss.*** (Doc 30, at 13:1-7.) And significantly, Plaintiffs do not dispute that those cited paragraphs are indeed argumentative. But because Plaintiffs argue that Defendants "fail to point out" each of the additional numerous instances of argumentative language beyond Paragraphs 30, 35, 79, 87, 123, 142, and 147 (Doc 30, at 13:1-7), and because they claim they removed 13 argumentative paragraphs of their still 338 paragraph Amended Complaint (Doc. 30, at 13:12-23), Defendants herein direct the Court to the following numerous paragraphs in the Amended Complaint where Plaintiffs continue to be argumentative, duplicative, and/or ambiguous as to identity, etc.: 31-32, 34, 45-46, 53-55, 76, 78, 80-81, 83-85, 88-89, 94, 98, 100-02, 120-21, 124, 125, 133-36, 140, 143, 146, 148, 150, 155, 166, 170-71, 181-82, 185, 189, 191, 197, 200, 206, 210, 228, 230, 231, 233-36, 241, 243-44, and 246. While Defendants agree that, at a minimum, further amendment is necessary, Plaintiffs should not be afforded limitless opportunities to amend their complaint. Moreover, as argued in Defendants' Motion to Dismiss, there are numerous deficiencies that run afoul of Rule 8. As such, and in additional to the other reasons above warranting dismissal of numerous claims and other defendants, dismissal is warranted based on Rule 8; at a minimum, further amendment should be required to correct the continuing deficiencies in the Amended Complaint.

## V.   CONCLUSION

For the foregoing reasons, and those further explained in the Motion to Dismiss, Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint in its entirety pursuant to Rule 8, or, alternatively: (1) dismiss Defendants Ravelo, Ramirez, and Howard because Plaintiffs do not state any valid claims against them in the operative Counts I, II, V, VI, and VII; (2) dismiss Plaintiffs' *Monell* claims asserted in Counts III,

IV, and VIII; (3) dismiss Plaintiffs' excessive force claims asserted in Counts II, III, and IV to the extent that they assert Fourteenth Amendment violations; (4) dismiss Plaintiffs' excessive force, *Monell liability*, failure to intervene, gross negligence, and battery claims asserted in Counts II, III, IV, V, VI, VII, and VIII to the extent they are asserted by Plaintiffs Roberts and Turner, both of whom are not the personal representative of Mr. Kirk's estate, which Plaintiffs have conceded; and (5) dismiss Plaintiffs' punitive damages request under Count I, which Plaintiffs have also conceded.

RESPECTFULLY SUBMITTED this 1st day of December, 2023.

BROENING OBERG WOODS & WILSON, P.C.

By: /s/ Sarah L. Barnes
Sarah L. Barnes
Kelley M. Jancaitis
*Attorneys for Defendants City of Phoenix, Sullivan, Ladines, Garza, Roy, Ravelo, Ramirez and Howard.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2023, I electronically transmitted the foregoing with the Clerk of the Court using the CM/ECF system for filing, with copies submitted electronically to the following recipients:

Sean A. Woods
Robert T. Mills
MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiffs*

/s/ *Kathy Lake*

- 13 -