Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
rmills@millsandwoods.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Kashane Kirk, as Personal Representative and on behalf of the Estate of Leontae Kirk; Sharon Roberts, individually; Brittnie Turner, on behalf of and as legal guardian and parent of her minor child, MC,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Phoenix, a governmental entity; Michael Sullivan, Chief of the Phoenix Police Department; Autumn Ladines and John Doe Ladines, husband and wife; Officer Antonio Garza and Jane Doe Garza, husband and wife; Sergeant Eric Roy and Jane Doe Roy, husband and wife; Jaclyn Ravelo and John Doe Ravelo, husband and wife; Steven Ramirez and Jane Doe Ramirez, husband and wife, and; Jonathan Howard and Jane Doe Howard, husband and wife,<br><br>Defendants. | No.: CV-23-00836-PHX-MTL (CDB)<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDNATS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**<br><br>(Assigned to the Honorable Michael T. Liburdi and referred to the Honorable Camille D. Bibles) |

Through counsel undersigned, Plaintiffs hereby respond in opposition to the "Motion to Dismiss Pursuant to Rule 12(b)(6) & Rule 8(d)" (the "MTD") filed by Defendants City of Phoenix, Michael Sullivan, Autumn Ladines, Antonio Garza, Eric Roy, Jaclyn Ravelo, Steven Ramirez, and Jonathan Howard (collectively, "Defendants"), which

seeks dismissal of Plaintiffs' Third Amended Complaint (the "TAC"). This Response is supported by the Memorandum of Points and Authorities below, by Plaintiffs' "Response in Opposition to City Defendants' Motion to Dismiss (Doc. 29)," the entirety of which is hereby incorporated herein by reference, and all relevant parts of the record in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STANDARD OF REVIEW

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted).

When resolving a motion to dismiss, a Court must accept as true all factual allegations in the complaint and construe those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Further, in the context of a motion to dismiss, the court properly resolves any doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

The probability of success at trial should not be considered, as "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Bell*

2

*Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal citation omitted). Facts pled are assumed to be true, as "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Consequently, motions to dismiss are disfavored and are to be granted only if there is no cognizable factual or legal basis for the claim.

## II. PLAINTIFFS SHARON ROBERTS AND BRITTNIE TURNER AGREE THAT ONLY PLAINTIFF KASHANE KIRK MAY BRING CLAIMS UNDER A.R.S. § 14-3110 AGAINST DEFENDANTS.

In Response to **§ I** of the MTD, Plaintiffs Sharon Roberts and Brittnie Turner agree that only the personal representative of Leontae Kirk's ("Leontae's") estate, Plaintiff Kashane Kirk, may bring claims premised on A.R.S. § 14-3110, Arizona's survival statute.

## III. PLAINTIFFS AGREE THAT THE WRONGFUL DEATH CLAIMS MAY ONLY BE BROUGHT BY ONE REPRESENTATIVE, STATUTORY PLAINTIFF.

In Response to **§ II** of the MTD, Plaintiffs agree that the wrongful death claim contained in Count I of the TAC may only be brought by one plaintiff who "represents all other beneficiaries who have a 'legal right . . . to be compensated for their loss resulting from [Leontae's] death.'" *See Wilmot v. Wilmot*, 58 P.3d 507, 511 (Ariz. 2002) (citation and emphasis omitted). Because Plaintiffs Sharon Roberts, Brittnie Turner, and Turner's minor child "MC" are each statutory beneficiaries of Leontae's estate with claims for

compensation for their loss arising from his death, and each desires to preserve those claims and rights to compensation, Plaintiffs submit that Plaintiff Sharon Roberts can be the single representative Plaintiff with respect to the wrongful death claims should the Court determine that Plaintiffs should be consolidated for that purpose.

## IV. PLAINTIFFS' FAILURE TO INTERVENE CLAIM IS SUFFICIENTLY PLED.

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." Cunningham v. Gates, 229 F.3d 1271, 1289 (quotations omitted) (quoting *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994)). "[O]fficers can be held liable for failing to intercede [ ] if they had an opportunity to intercede." *Id.* (citation omitted). "[T]he constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows." *Koon*, 34 F.3d at 1447 n.25, *rev'd on other grounds*, 518 U.S. 81 (1996). Moreover, liability under § 1983 extends to officers "who perform functions 'integral' to an unlawful search, even if their individual actions do not themselves rise to the level of a constitutional violation." *Bravo v. City of Santa Maria*, 665 F.3d 1076 (9th Cir. 2011). Officers that provide armed backup during an unconstitutional search are integral to that search. *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004) (each officer involved in the search operation was an integral participant).

In this case, none of the events would have occurred but for Howard's and Ramirez' reporting of false information over police dispatch. They maintained visual sight lines over the event and had every opportunity to correct their misinformation. Plaintiffs have alleged that "[a]t any point during their constant observation, they could have relayed updated

4

information – that Leontae was not in fact firing a weapon. They did not." TAC ¶¶ 118-19; *see also* TAC ¶ 162 ("The Helicopter Officers . . . could have and should have updated their observations and relayed the same to the [officers on the ground] – namely, that no shots were being fired."). Instead, they watched as the events transpired leading to Leontae's death. Accordingly, Howard and Ramirez had an opportunity to correct the misinformation they had reported. It stands to reason that if Howard and Ramirez had not reported an active shooter, or if they had timely corrected their report of an active shooter, that the police officers on the ground that arrived later would never have shot and killed Leontae. They had every opportunity to do so, and thus prevent that death, but they did not.

As to Ravelo, she arrived on scene at the exact same time as Ladines, who was the first of the shooters that actually shot Leontae. Ravelo reported that: a) there was a man at the bus stop who only left after her direction to leave, and; b) she did not fire her weapon at Leontae because she did not see a gun in his hand and did not even believe that he matched the description. She was able to form those thoughts as soon as she arrived on scene.

Plaintiffs pled that Ravelo:

> WAS UNSURE IF LEONTAE WAS THE SUBJECT OF THEIR CALL, AS HE DID NOT MATCH THE DESCRIPTION, ***AND SHE DID NOT SEE LEONTAE WITH A WEAPON***. OFFICER RAVELO CONTINUED LOOKING AROUND FOR A HISPANIC MALE IN THE RED HOODED SWEATSHIRT.

TAC ¶ 241 (emphasis in original).

Plaintiffs further pled that Ravelo:

> DID NOT SEE ANYONE WITH A FIREARM OTHER THAN THE POLICE, SO SHE DID NOT DISCHARGE HER WEAPON. OFFICER

5

> RAVELO RECALLED HEARING APPROXIMATELY TEN GUNSHOTS BUT NOTED THAT OFFICERS SEEMED TO BE FIRING SIMULTANEOUSLY. AFTER THE GUNFIRE ENDED, LEONTAE WAS DOWN ON THE GROUND, LYING ON HIS BACK WITH HIS HANDS DOWN BY HIS SIDES IN THE SAME VICINITY WHERE OFFICER RAVELO INITIALLY OBSERVED HIM.

TAC ¶ 242.

Ravelo had enough time *before* her fellow officers began shooting to evaluate the situation and come to the conclusion that this was *not* what was reported over dispatch. She was within earshot of Ladines, and thus had the opportunity to tell Ladines to hold her fire until officers could confirm the reported information was accurate. She did not do this. In fact, Plaintiffs allege that "Ravelo admits that she saw Leontae unarmed before the shooting started." TAC ¶ 160. Moreover, they allege that "[s]ince her partner, Ladines, was running with her, Ravelo knew that Ladines had her firearm in her hands pointing at Leontae. Ladines kicked off the shooting." TAC ¶¶ 246-47.

Plaintiffs have pled that Ravelo, Howard, and Ramirez had every opportunity to correct the misinformation regarding an active shooter. Because of their failure to act, they are just as liable as the officers who shot Leontae.

Defendants cite *Waller v. City of Nogales*, 4:22-CV-00244-RCC (D. Ariz. June 6, 2023) for the proposition that officers need a realistic opportunity to intercede. However, in that case neither the plaintiff's complaint nor the proposed amendments thereto made specific allegations regarding the non-shooting officers' actions. There, the court held that "[n]or are any individual actions of these officers detailed in the amendment." *Waller*, 4:22-CV-00244-RCC, at *11. Here, in contrast, Plaintiffs have extensively alleged actions and failures to act on the part of Ravelo, Howard, and Ramirez.

Defendants also, strangely, argue that the TAC fails to state a claim for failure to intervene against the officers who actually fired their weapons at Leontae – Defendants Roy, Garza, and Ladines. However, if officers who were directly in each others' presence and actually shooting at Leontae can be said to not have had an opportunity to intercede to stop their fellow officers, it is difficult to imagine in what circumstances any officer ***could*** have had such an opportunity. Plaintiffs allege that "Roy, Garza, and Ladines had the same opportunity [as Ravelo] to observe that Leontae was not a threat," and yet did nothing to stop each other from shooting. TAC ¶ 245; *see also* TAC ¶ 190. In fact, they allege that when these Defendants arrived at the scene, "Leontae had already thrown his weapon to the ground, put his hands in the air and began to sit in a surrendering position." TAC ¶ 134. In such circumstances, it strains credulity to suppose that Roy, Garza, and Ladines did not have a realistic opportunity to stop each other from firing. The Court should disregard this specious argument by Defendants.

Defendants also cite to *Cunningham* in support, but in that case there were multiple officers who were not present when the shooting occurred. Here, Plaintiffs have alleged that the non-shooting officers were present and had an opportunity to intervene. At this stage, the Court must accept as true all factual allegations in the complaint and construe those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

///

///

///

7

## V. PLAINTIFFS AGREE THAT THEY MAY NOT RECOVER PUNITIVE DAMAGES AGAINST DEFENDANTS CITY OF PHOENIX AND SULLIVAN.

In response to **§ IV** of the MTD, Plaintiffs agree that punitive damages are not recoverable against municipalities or municipal officers acting in their official capacity, and therefore they may not recover punitive damages Defendants City of Phoenix and Michael Sullivan.

## VI. PLAINTIFFS' COMPLAINT DOES NOT VIOLATE RULE 8(d).

Defendants request the extreme remedy of full dismissal of the TAC because, they complain, it violates Rule 8(d). The Court should decline such a drastic sanction. That rule states:

> (1) In General. Each allegation must be simple, concise, and direct. No technical form is required.
>
> (2) Alternative Statements of a Claim or Defense. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
>
> (3) Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency.

Fed. R. Civ. P. 8(d). Plaintiffs have met the requirements of this rule.

This is not a simple case. It is highly technical and complex. Leontae's Constitutional rights were not simply violated in the sense that he was not read his Miranda Rights at a traffic stop or that his free speech was curtailed. He was killed as a result of Defendants' conduct. A case like this is subject to intense scrutiny because of highly fact-intensive inquiries under doctrines such as qualified immunity, among others. Without very specific facts pled in great detail, the Court would be faced with the prospect of not having

8

enough information to properly evaluate Plaintiffs' allegations – allegations based on actual documentary evidence. Plaintiffs recognize that the TAC is verbose, but Plaintiffs are also under a duty to provide this Court with the factual allegations supporting their claims. That is, in fact, what Plaintiffs have done.

Since filing their original Complaint in this action, Plaintiffs have made substantial edits to remove argumentative or speculative language. For example, they removed the following language from the original Complaint:

- It serves as the City's and the Police Department's mea culpa
- It is a travesty beyond comprehension
- This is not a simple mistake that can be brushed aside
- Bad information is bad information
- This is why police must approach a situation such as this with caution
- "cowboy"
- Was Roy upset by his actions? Not at all. [City Defendants complain that this allegation was changed to "Roy was not upset by his actions"
- This is not a case of simple neglect
- It begs the question that if weapons had been fired, why did the person at the bus stop stay and not run for cover?
- There is no other possible explanation
- This could not be further from the truth. Leontae was dying.
- Likely realized how much of a mistake they had made and they…
- If they were available, they should…

They also removed, among other examples, the following language from the First Amended Complaint:

- In a complete lack of clarity . . .

Finally, they removed the following language from the Second Amended Complaint:

- Mistakes cannot happen – they are life and death decisions
- [T]o avoid the very fate he suffered at the hands of the Defendants
- Not a single officer paused for reflection

9

Defendants, arguing that Plaintiffs should not receive unlimited opportunities to remedy alleged deficiencies in their pleading, cite *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671 (9th Cir. 1981) in support. However, in *Nevijel*, the plaintiff's complaint was "filed in November 1976, was verbose, confusing and almost entirely conclusory. It consisted of 48 pages with 14 pages of addenda and 9 pages of exhibits." *Id.* at 674. Furthermore, in that case the plaintiff waited "19 months" to file a response to the defendant's motion to dismiss, without requesting additional time. *Id.* Finally, the second complaint in *Nevijel* contained almost three (3) times the number of pages of addenda – 24 – as the first complaint, and it "named additional defendants without leave of court . . . ." *Id.*

None of that is true in this case. The TAC is neither confusing nor conclusory. It does not attach any exhibits or addenda – let alone twenty-four (24) pages worth of addenda. Moreover, Plaintiffs have not added any Defendants – in fact, they have dismissed Defendants present in the original complaint. Plaintiffs' Background section is a little over seven (7) pages long. This is because Plaintiffs needed to set the groundwork for the long history of use of excessive force by the Phoenix Police Department, as well as the United States Department of Justice's investigation into the same. Had Plaintiffs merely alleged, with no factual underpinning, that the Phoenix Police Department has a long-standing history of use of excessive force, this Court would not have the proper information to understand the basis of Plaintiffs' *Monell* claims.

The TAC is forty-nine (49) pages long, of which forty-seven (47) pages are substantive. As discussed above, approximately seven (7) of those forty-seven (47) pages

are related to background information and a short introduction to the basics of the TAC. The additional forty (40) pages are needed to layout not only the facts of what occurred, but also to plead enough facts to establish a prima facie case for *Monell* Liability. Furthermore, Defendants' police reports were extensive. The Investigative Reports created by the City's employees were also just as – if not more – extensive. To demonstrate that Plaintiffs have actual factual support for their allegations, Plaintiffs include exact quotes from reports and statements made by City Defendants which total approximately seven (7) pages.

Of the remaining pages of the TAC, approximately nine (9) pages are dedicated to the actual Counts against Defendants. Plaintiffs painstakingly crafted the allegations in the TAC to provide the full picture, with factual support of the events that occurred on the day Leontae was killed. It is not astonishing that when a person dies at the hands of police officers, that there are voluminous records associated with the incident.

There are multiple and far less drastic alternatives to a dismissal with prejudice. While the Federal Rules have changed slightly since *Nevijel* was decided in 1981, it is still instructive:

> [t]hese less drastic alternatives include allowing further amended complaints, allowing additional time, or insisting that appellant associate experienced counsel. "Courts have been reluctant to impose the ultimate sanction of dismissal with prejudice" . . . .

*Nevijel*, 651 F.2d at 674 (quoting *Schmidt v. Herrmann*, 614 F.2d 1221 (9th Cir. 1980)).

On the one hand, Defendants argue that Plaintiffs did not plead enough facts to survive dismissal of certain claims, yet on the other hand also complain that Plaintiffs have pled ***too much*** under Rule 8. The simple fact is that Plaintiffs are required to layout their

claims coherently and cogently. In a case as factually intensive as this one, involving the death of an unarmed civilian at the hands of police officers, Plaintiffs must provide sufficient factual underpinning to their claims. Otherwise, Plaintiffs would be required to write an entirely conclusory complaint that would be deficient on its face.

Simply put, Plaintiffs have not violated Rule 8. Nevertheless, even if they have, dismissal is an extreme and unwarranted remedy. To the extent this Court determines that Plaintiffs' TAC needs further refinement, Plaintiffs respectfully request further leave to amend.

## VII. CONCLUSION

For all the foregoing reasons, the Court should deny the MTD and decline to dismiss the TAC, either in whole or in part.

**RESPECTFULLY SUBMITTED** this 6th day of December 2024.

**MILLS + WOODS LAW, PLLC**

By  */s/ Sean A. Woods*
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
*Attorneys for Plaintiffs*

12

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2024, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Sarah L. Barnes
slb@bowwlaw.com
Kelley M. Jancaitis
kmj@bowwlaw.com
Jeremiah M. Sullivan
jms@bowwlaw.com
**BROENING OBERG WOODS & WILSON, P.C.**
kel@bowwlaw.com
szb@bowwlaw.com
rla@bowwlaw.com
2800 N Central, 16th Floor
Phoenix, AZ 85004
*Attorney for Defendants City of Phoenix, Sullivan, Ladines, Garza, Roy, Makic, Ravelo, Ramirez, Howard, Traylor, and Reddy*

        /s/ Ben Dangerfield