**WO**  JL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kashane Kirk, et al., | No. CV-23-00836-PHX-MTL (CDB) |
| Plaintiffs, | |
| v. | **ORDER** |
| City of Phoenix, et al., | |
| Defendants. | |

Plaintiffs Kashane Kirk, Sharon Roberts, and Brittnie Turner, who are represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983 as personal representative and on behalf of the estate of Leontae Kirk. Defendants City of Phoenix, Phoenix Police Department Chief Michael Sullivan, Sergeant Eric Roy, and Officers Antonio Garza, Autumn Ladines, Jaclyn Ravelo, Steven Ramirez, and Jonathan Howard have filed a Motion to Dismiss the Third Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 64.)  The Motion is fully briefed.  (Doc. 67, 74.)

The Court will grant the Motion in part and deny it in part.

**I.    Background**

Plaintiffs filed their original Complaint on May 12, 2023.  (Doc. 1.)  Before Defendants answered the Complaint, Plaintiffs sought leave to file an amended complaint. (Doc. 24.)  The Court granted Plaintiffs' Motion, and on October 25, 2023, Plaintiffs filed their First Amended Complaint.  (Doc. 27.)

On November 3, 2023, Defendants moved to dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure 8(d) and 12(b)(6). (Doc. 29.) In their Response, Plaintiffs opposed the Motion and, in the alternative, sought leave to file an amended complaint. (Doc. 30.) In a September 5, 2024 Order, the Court gave Plaintiffs leave to amend and denied Defendants' Motion to Dismiss with leave to refile if Plaintiffs did not file a timely Second Amended Complaint. (Doc. 53.)

On October 5, 2024, Plaintiffs filed a Second Amended Complaint. (Doc. 57.) Before Defendants answered the Second Amended Complaint, Plaintiffs filed an unopposed Motion to Amend/Correct, seeking leave to file a third amended complaint, which the Court granted in a November 8, 2024 Order. (Docs. 61, 62.) Plaintiffs filed the Third Amended Complaint (TAC) the same day. (Doc. 63.)

**II.     Legal Standards**

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

1  defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

2  **III.   Third Amended Complaint**

3  In the TAC, Plaintiffs assert claims arising out of the shooting death of Leontae Kirk
4  by Phoenix Police Department officers. (Doc. 63.)

5  Plaintiffs allege the following relevant facts:

6  On November 2, 2022, Leontae was at a convenience store. (*Id.* ¶ 86.)
7  Unbeknownst to Leontae, another individual, Humberto Gonzalez-Rios, followed Leontae
8  into the store. (*Id.* ¶¶ 90-91.) Gonzalez-Rios exited the convenience store before Leontae,
9  went to a motorcycle, retrieved a gun, sat on the motorcycle with his gun, and waited for
10 Leontae to exit the store. (*Id.* ¶¶ 93-95.) Leontae exited the store with his back to
11 Gonzalez-Rios. (*Id.* ¶ 97.) Leontae turned around and saw Gonzalez-Rios sitting on the
12 motorcycle with a gun pointed at Leontae. (*Id.* ¶ 98.) Leontae ran and pulled out his
13 weapon while searching for cover. (*Id.* ¶¶ 99-100, 133.)

14 At some point, a witness had called 911 and told dispatch that she observed a
15 Hispanic male in his 20s or 30s wearing a yellow jacket, red shorts, and black slippers
16 pointing a gun at her and her friends and telling them to be quiet. (*Id.* ¶ 125.) The report
17 regarding a yellow jacket and red shorts was inaccurate. (*Id.* ¶ 128.)

18 By the time Leontae pulled out his weapon, a Phoenix Police helicopter was above
19 the scene. (*Id.* ¶ 106.) The "Helicopter Officers"—Defendant Howard, who was the pilot,
20 and Defendant Ramirez, who was the spotter with the primary job of relaying accurate
21 information—claimed that they saw Leontae and Gonzalez-Rios actively firing their
22 weapons. (*Id.* ¶ 107.) Dispatch audio inaccurately announced that there was an "active
23 shooter" situation. (*Id.* ¶ 108.) The Helicopter Officers had binoculars and a visual line of
24 sight on Leontae. (*Id.* ¶ 109.) The Helicopter Officers incorrectly reported that Leontae
25 was firing his weapon. (*Id.* ¶ 111.)

26 Defendants Ladines and Ravelo responded to a "SUBJECT WITH A GUN" call.
27 (*Id.* ¶ 202.) Defendants Roy and Garza also arrived at the scene. (*Id.* ¶ 156.) When
28 Phoenix Police Officers arrived on the scene, Leontae had already thrown his weapon to

the ground, put his hands in the air, and begun to sit in a surrendering position. (*Id.* ¶ 134.) Defendants Ladines, Roy, and Garza immediately began shooting at Leontae. (*Id.* ¶ 156.) None of the officers secured the scene, announced their presence, or attempted to contact Leontae. (*Id.* ¶¶ 157, 166-67.) Defendant Ravelo was running with Defendant Ladines and saw Leontae unarmed before the shooting started. (*Id.* ¶ 160.) Leontae was shot 19 times and died. (*Id.* ¶ 81.)

In the ensuing investigation, Defendant Ravelo stated that she was unsure if Leontae was the subject of the call because he did not match the description, and she did not see Leontae with a weapon. (*Id.* ¶ 241.) Defendant Ravelo stated that she continued looking around for a Hispanic male in a red hooded sweatshirt. (*Id.*) Ravelo stated that she did not see anyone with a firearm other than the police, so she did not discharge her weapon. (*Id.* ¶ 242.)

In Count I, Plaintiffs assert a wrongful death claim against Defendants City of Phoenix and Sullivan. (*Id.* at 39.) In Count II, Plaintiffs assert a Fourth and Fourteenth Amendment excessive force claim against Defendants Ladines, Garza, and Roy. (*Id.* at 40.) In Count III, Plaintiffs assert a policy, custom, pattern, or practice claim pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against Defendants City of Phoenix and Sullivan. (*Id.* at 41.) In Count IV, Plaintiffs assert a failure-to-intervene claim against Defendants Ravelo, Ramirez, and Howard. (*Id.* at 43.) In Count V, Plaintiffs assert a gross negligence claim against the City of Phoenix. (*Id.* at 44.) In Count VI, Plaintiffs assert a negligent hiring, supervision, retention, and/or training claim against Defendants City of Phoenix and Sullivan. (*Id.* at 47.) Plaintiffs seek compensatory, general, special, non-pecuniary, punitive, and exemplary damages; pre- and post-judgment interest; and their costs and fees for this case. (*Id.* at 48.)

**IV. Discussion**

    **A. Survival and Wrongful Death Claim**

In their Motion, Defendants assert that Plaintiffs Roberts and Turner lack standing to maintain claims on Leontae's behalf, and only one Plaintiff—Kashane Kirk—can

maintain the wrongful death claim. (Doc. 64 at 3.) Defendants ask the Court to dismiss Plaintiffs Roberts and Turner. (*Id.*)

Plaintiffs concede that the wrongful death claim may only be brought by one plaintiff who "represents all other beneficiaries who have a legal right . . . to be compensated for their loss resulting from [Leontae's] death.'" (*Id.*) In Arizona, a cause of action "shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed." Ariz. Rev. Stat. § 14-3110. Arizona's wrongful death statute provides, "An action for wrongful death shall be brought by and in the name of the surviving husband or wife, child, parent or guardian, or personal representative of the deceased person for and on behalf of the surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate." Ariz. Rev. Stat. § 12-612(A).

Plaintiff Roberts is Leontae's mother, so she is a viable plaintiff under the survival statute. (TAC ¶ 8.) Plaintiff Kirk is the personal representative of the Estate of Leontae Kirk, so she is also a viable Plaintiff under the survival statute. (*Id.* ¶ 9.) Plaintiff Turner is the mother of MC, who is Leontae's minor child, which does not give her authority to bring this action under the statute. (*Id.* ¶ 11.) In their Response, Plaintiffs submit that Leontae's mother, Plaintiff Roberts, can be the single representative for the estate with respect to the wrongful death claim. (*Id.* at 4.) In their Reply, Defendants do not object to Plaintiff Roberts acting as the single representative for the estate with respect to the wrongful death claim. The Court will grant Defendants' Motion to Dismiss insofar as it will dismiss Plaintiff Turner.

**B.    Punitive Damages against Defendants City of Phoenix and Turner**

Defendants argue that Plaintiffs cannot seek punitive damages against Defendants City of Phoenix and Sullivan. (Doc. 64 at 7.) In their Response, Plaintiffs concede that they may not recover punitive damages against Defendants City of Phoenix and Sullivan

in their official capacities. (*Id.* at 8.)

Under § 1983, a claim against an individual in his official capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). And punitive damages under § 1983 are not available against "local governing bodies." *Prison Legal News v. Babeu*, 933 F. Supp. 2d 1188, 1214 (D. Ariz. 2013). Under Arizona law, "[n]either a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages." Ariz. Rev. Stat. § 12-802.04. The Court will grant this portion of Defendants' Motion to Dismiss.

### C. Failure to Intervene (Count IV)

As a general matter, "[t]here is[ ] . . . no constitutional duty of state officials to protect members of the public at large from crime." *Balistreri*, 901 F.2d at 699–700 (citing *Martinez v. California*, 444 U.S. 277, 284–85 (1980)). Although they have no constitutional duty to protect the public, state and local law enforcement officers "'have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.'" *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (citation omitted).

The Ninth Circuit has held that in the excessive force context,

> the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows. Thus an officer who failed to intercede when his colleagues were depriving a victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights.

*United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994), *vacated in part on other grounds by Koon v. United States*, 518 U.S. 81 (1996). But officers can be held liable for

failing to intercede only if they had a "realistic opportunity to intercede." *Cunningham*, 229 F.3d at 1289–90.

### 1.     Parties' Arguments

Defendants contend that Plaintiffs fail to state a viable claim for failure to intervene. (Doc. 64 at 4.) Defendants assert that the TAC "fails to allege any facts explaining how non-shooting and non-present officers such as Defendants Ravelo, Ramirez, and Howard could have intervened," and "there are no well-pleaded allegations of timing, proximity, or these officer's reasonable opportunity to intervene." (*Id.* at 6.)[1]

In their Response, Plaintiffs default to arguing that Ramirez and Howard were integral participants in the shooting. (Doc. 67 at 5.) Plaintiffs contend that "none of the events would have occurred but for" Defendants Howard and Ramirez's "reporting of false information over police dispatch"; "[t]hey maintained visual sight lines over the event and had every opportunity to correct their misinformation"; and "they watched as the events transpired leading to Leontae's death." (*Id.* at 4-5.) "It stands to reason," Plaintiffs assert, that if Defendants Howard and Ramirez "had not reported an active shooter, or if they had timely corrected their report of an active shooter, that the police officers on the ground that arrived later would never have shot and killed Leontae. They had every opportunity to do so, and thus prevent that death, but they did not." (*Id.* at 5.)

Defendants argue in their Reply that Plaintiffs fail to explain "how two officers flying a helicopter hundreds of feet over the ground and only able to communicate over radio had a meaningful opportunity to intervene." (Doc. 73 at 2.) Defendants contend that Plaintiffs' argument for Defendants Howard and Ramirez's liability, which Defendants characterize as premised on Howard and Ramirez's mere presence at the scene, was "flatly

---

[1] Defendants argue that the TAC "also fails to allege sufficient facts to support a failure to intervene claim against Defendants Roy, Garza, and Ladines, the officers who fired their weapons" because Plaintiffs have not pleaded "sufficient facts to indicate how Defendants Roy, Garza, and Ladines failed to intervene to prevent each other's use of excessive force"; nor have they alleged "facts to establish, in the form of timing and proximity, that they had a meaningful opportunity to intervene." (*Id.* at 7.) Plaintiffs did not assert Count IV against Defendants Roy, Garza, and Ladines, and the Court therefore need not address Defendants' argument.

rejected" in *Waller v. City of Nogales*, CV-00244-TUC-RCC, 2023 WL 3863655, at *1 (D. Ariz. June 7, 2023).

In *Waller*, the plaintiff conceded that various officers were present but did not shoot the decedent and were not acting in a supervisory role. 2023 WL 3863655, at *7. Instead, the plaintiff argued that because the officers were in the vicinity and equipped with radios that could communicate with other officers on the scene, the additional defendants had a duty to intervene. *Id.* The Court determined that, based on the information provided by the plaintiff in both the initial and proposed amended complaint, it was "unlikely that these additional officers had a realistic opportunity to intercede on [the decedent's] behalf at the point he was shot." *Id.*

With respect to Defendant Ravelo, Plaintiffs argue in their Response that they have adequately pleaded that Ravelo had every opportunity to "correct the misinformation regarding an active shooter." (Doc. 67 at 6.) Plaintiffs point to their allegation that "Ravelo had enough time **before** her fellow officers began shooting to evaluate the situation and come to the conclusion that this was **not** what was reported over dispatch." (*Id.*) Plaintiffs also point to their allegation that Ravelo "was within earshot of Ladines, and thus had the opportunity to tell Ladines to hold her fire until officers could confirm the reported information was accurate." (*Id.*)

In their Reply, Defendants argue that "Plaintiffs fail to allege sufficient facts to identify the proximity of Ravelo to Ladines when Ladines deployed force." (Doc. 73 at 4.) According to Defendants, "[i]f these allegations were accepted as sufficient support for the failure to intervene claim, then any non-shooting officer, regardless of their proximity to other force-using officers, could be sued due to their mere presence anywhere in the vicinity whatsoever at the time force was deployed." (*Id.*) Defendants assert that Defendant Ladines's use of force "has no bearing" on whether Defendant Ravelo had a meaningful opportunity to intervene, and "the simple fact that [Defendant] Ravelo heard gunshots does not support a failure to intervene claim against her." (*Id.*) Defendants also contend "there is no well-pled allegation to establish that [Ravelo] had sufficient time to

prevent other officers from using force, especially the force of firing an automatic weapon." (*Id.*) Defendants further argue that even if Defendant Ravelo knew that Defendant Ladines had her firearm pointed at Leontae after Ravelo discovered Leontae was unarmed but before the shooting began, "the TAC contains no allegations to identify what [Defendant] Ravelo knew, saw, or could do at the time [Defendant] Ladines decided to deploy force." (*Id.*)

**2. Analysis**

Generally, "[i]n order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). However, "[o]fficers who are 'integral participants' in a constitutional violation are potentially liable under § 1983, even if they did not directly engage in the unconstitutional conduct themselves." *Monteilh v. Cnty. of Los Angeles*, 820 F. Supp. 2d 1081, 1089 (C.D. Cal. 2011) (citing *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004)). To be "integral participants," officials must have at least the same level of intent as would be required if the official were directly to deprive the victim of his constitutional rights. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012). "[O]fficers can be held liable for excessive force on a theory of integral participation only if they participate 'in some meaningful way' in the specific actions that constituted the violation." *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (quoting *Boyd*, 374 F.3d at 780). An official is an integral participant only if "(1) the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant 'set[s] in motion a series of acts by others which [the defendant] knows or reasonably should know would cause others to inflict the constitutional injury." *Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)); *see also Monteilh*, 820 F. Supp. 2d at 1089 (citing *Jones*, 297 F.3d at 936) ("[I]ntegral participation requires some fundamental involvement in the conduct that allegedly caused the violation.").

Accepting Plaintiffs' allegations as true, Defendants Ramirez and Howard could communicate with officers on the scene, but they were not on the ground, did not shoot Leontae, and were not acting in a supervisory role. *See Waller*, 2023 WL 3863655, at *7. Plaintiffs' allegations support an inference that there was some gap of time between Ramirez and Howard stating there was an active shooter situation and the shooting. But Plaintiffs do not allege that Ramirez and Howard ever discovered their statement that Leontae was actively shooting a weapon was incorrect and do not specify the length of time that elapsed between the information Ramirez and Howard provided and the shooting, much less allege that enough time elapsed to support an inference that Ramirez and Howard had time to discover and correct their misinformation before the shooting began. Plaintiffs' allegations do not permit an inference that Defendants Ramirez and Howard had a realistic opportunity to intervene to prevent the shooting. *See Cortesluna v. Leon*, 979 F.3d 645, 656 (9th Cir. 2020), *rev'd on other grounds by Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) (affirming summary judgment on "failure to intervene" theory where the "events unfolded very rapidly—in a matter of seconds" leaving the officer without "any realistic opportunity to intercede"); *Atencio v. Arpaio*, 674 F. App'x 623, 626 (9th Cir. 2016) (concluding that district court erred in denying qualified immunity to officer on excessive force claim where, although the officer might have seen another officer deliver a knee strike, there was no evidence that the first officer "directed or otherwise knew that the solitary knee strike would occur, physically participated in the knee strike, or had a realistic opportunity to stop the knee strike from happening"); *Andrich v. Kostas*, 470 F. Supp. 3d 1048, 1060-61 (D. Ariz. 2020) (complaint failed to state a claim for failure to intervene where the "possibility of intervention [was] conclusory and unsupported by facts indicating, for example, [the non-shooting officer's] physical proximity to [the shooting officer] at the time of the shooting," and even assuming that the non-shooting officer "escalated the situation through his initial use of fist strikes and a taser, such escalation [did not] show that he had the opportunity to intervene [in the shooting officer's] subsequent decision to shoot" the decedent).

Nor do Plaintiffs' allegations support an inference that Howard and Ramirez were integral participants in the shooting Defendants use of excessive force. Plaintiffs have not adequately alleged that Howard and Ramirez acquiesced in a common plan to shoot Leontae because Plaintiffs allege no facts to support an inference that Howard and Ramirez knew or should have known that the officers on the ground planned to shoot Leontae before it occurred. Indeed, the only communication alleged to have occurred between Howard and Ramirez and the officers on the ground is the initial report that Leontae and Gonzalez-Rios were actively firing their weapons. *Cf. Boyd*, 374 F.3d at 780 (officers were "integral participants" in use of excessive force where they stood armed behind an officer while he reached into the doorway and deployed the flash-bang; the use of the flash-bang was part of the search operation in which every officer participated in some meaningful way; and every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed).

Plaintiffs' allegations are also insufficient to show that Defendants Howard and Ramirez "set in motion a series of acts" by the officers on the ground that they "knew or reasonably should have known would cause" the officers to shoot Leontae. Howard and Ramirez's report that Leontae was actively shooting a weapon is insufficient to support their liability as integral participants, even if, as Plaintiffs allege, the shooting would not have occurred but for the false report. *See Peck*, 51 F.4th at 890 (contributing to or facilitating a constitutional violation requires more than simply but-for causation; "a standard of pure but-for cause, not tied to the defendant's knowledge or intent, would subject to liability not only the non-shooting deputies," but also "the 911 dispatcher who sent them to the scene, and, for that matter, the mechanic who fixed their cars so they could drive there"); *cf.*, *e.g.*, *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020) (officer who ordered that plaintiff be "picked up" was integral participant in unlawful arrest because "the officer's order caused the unlawful arrest; the officer knew that the order would do so; and, because the officer had no basis for believing that there was probable cause, he also knew that the resulting arrest would be unlawful"); *see also Nicholson v.*

*City of Los Angeles*, 935 F.3d 685, 692 (9th Cir. 2019) (holding an officer liable as an integral participant in an unlawfully prolonged detention because he was "the initial officer who set the[ ] events into motion, and either instructed the other officers to arrest Plaintiffs or consulted with them in that decision") (emphasis omitted)).  Even if it was foreseeable that the ground officers were more likely to shoot after being told that the suspects exchanged gunfire, it was not reasonably foreseeable that the ground officers would start shooting based on this information alone, without observing Leontae for themselves to determine whether he had a weapon.

Plaintiffs' allegations do not support Defendants' Howard and Ramirez's liability for failure to intervene or integral participation in the shooting.  The Court will therefore grant Defendants' Motion to Dismiss Count IV as to Defendants Howard and Ramirez.

Accepting Plaintiffs' allegations as true, Defendant Ravelo was unsure if Leontae was the subject of the 911 call because he did not match the description of the suspect, and she did not see Leontae with a weapon, so she continued searching for a Hispanic male in a red hooded sweatshirt.  Plaintiffs allege that Ravelo was running with Defendant Ladines and "knew Ladines had her firearm in her hands pointing at Leontae."  (TAC ¶ 247.)  This allegation does not support an inference that Ravelo knew Ladines was going to shoot Leontae before it occurred.

For these reasons, the Court will grant Defendants' Motion to Dismiss Count IV.

**D.    Rule 8**

Finally, Defendants argue that the TAC violates Rule 8 of the Federal Rules of Civil Procedure because it "does not allege short and clear statements that allow each Defendant to prepare their respective responsive pleading" because it "contains a voluminous number of conclusory, argumentative, speculative, irrelevant and/or duplicative allegations"; "fails to state the requisite 'simple, concise, and direct' allegations" because, at 48 pages and 400 paragraphs, the TAC is "much longer than the previous version of the complaint"; "the overwhelming number of argumentative, conclusory, irrelevant and duplicative allegations makes answering Plaintiffs' TAC at a minimum unduly burdensome, if not downright

impossible in many respects"; and "the TAC improperly lumps all Defendants into one group, namely in the failure to intervene claim (Count IV), but also in some of the other claims, without identifying the specific conduct by a specific individual." (Doc. 64 at 8-10.) Defendants assert that because Plaintiffs have had repeated opportunities to amend, the Court should dismiss the TAC without leave to amend and with prejudice. (*Id.* at 12.) Defendants alternatively request that the Court order that Plaintiffs may amend "one final time to eliminate many if not all of the above identified conclusory, argumentative and/or duplicative allegations/statements, along with amending to dismiss the claims/parties and relief." (*Id.*)

In their Response, Plaintiffs assert that this case is "highly technical and complex" and "is subject to intense scrutiny because of highly fact-intensive inquiries under doctrines such as qualified immunity, among others." (Doc. 67 at 8.) Thus, Plaintiffs contend, "[w]ithout very specific facts pled in great detail, the Court would be faced with the prospect of not having enough information to properly evaluate Plaintiffs' allegations – allegations based on actual documentary evidence." (*Id.* at 8-9.) Plaintiffs "recognize that the TAC is verbose" but argue that they are "under a duty to provide this Court with the factual allegations supporting their claims." (*Id.* at 9.) Plaintiffs assert that they have made substantial edits to remove argumentative or speculative language from the TAC. (*Id.*)

Rule 8(a) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a) requires not only "fair notice of the nature of the claim, but also grounds on which the claim rests." *Twombly*, 550 U.S. at 555 n. 3 (citation and quotes omitted). Although Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Twombly*, 550 U.S. at 555 (a "short and plain statement of the claim" requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid

of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). A complaint does not comply with Rule 8 if "one cannot determine from the complaint who is being sued, for what relief, and on what theory." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).

A pleading that "says *too much*" can also violate Rule 8(a), *Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013) (emphasis in original); thus, "Rule 8(a) has been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (internal quotation marks and citation omitted); *see also id.* at 1058 ("Although normally verbosity or length is not by itself a basis for dismissing a complaint, we have never held—and we know of no authority supporting the proposition—that a pleading may be of unlimited length and opacity. Our cases instruct otherwise.") (internal citation and quotation marks omitted); *McHenry*, 84 F.3d at 1179 (recognizing that "[p]rolix, confusing complaints … impose unfair burdens on litigants and judges"). "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *McHenry*, 84 F.3d at 1179; *see also Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013) (noting that Rule 12(b)(6) is read in conjunction with Rule 8(a)).

The TAC does not violate Rule 8. Plaintiffs' allegations are sufficient to provide Defendants "fair notice" of their claims "and the grounds upon which [they] rest[]." *Erickson*, 551 U.S. at 93. The length of the TAC, although it is longer than the previous pleadings, is not a basis for dismissing the TAC under Rule 8. *See Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008) (a complaint that was "logically organized, divided into a description of the parties, a chronological factual background, and a presentation of enumerated legal claims, each of which list[ed] the liable Defendants and the basis therefor," did not violate Rule 8 although it "set out more factual detail than necessary"). Even if some of Plaintiffs' allegations are irrelevant or repetitive, the FAC is "intelligible and clearly delineate[s] the claims and the Defendants against

whom the claims are made. *See id.* A verbose, imperfect, but comprehensible pleading that is not unduly burdensome on Defendants to formulate a response does not violate Rule 8. *See id.* at 1131 (citing *Garst v. Lockheed–Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Some complaints are windy but understandable. Surplusage can and should be ignored.")); *see also id.* at 1132 (noting that the district court has "ample remedial authority to relieve a defendant of the burden of responding to a complaint with excessive factual detail," including striking the surplusage or excusing defendants from addressing? certain paragraphs). The Court will deny Defendants' Motion to Dismiss based on Rule 8.

Defendants did not move to dismiss any of Plaintiffs' claims other than Count IV, and those claims remain. Pursuant to Rule 12(a)(4) of the Federal Rules of Civil Procedure, the Court will require Defendants to answer the remainder of the TAC within 14 days of the filing date of this Order.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. 64).

(2) Defendants' Motion to Dismiss (Doc. 64) is **granted** in part and **denied** in part, as follows:

    (a) The Motion is **granted** as to Count IV, Plaintiffs' request for punitive damages against Defendants City of Phoenix and Sullivan, and as to Plaintiff Turner.

    (b) In all other respects, the Motion is **denied**.

(3) Count IV is **dismissed without prejudice**.

(4) Plaintiff Turner is **dismissed**.

(5) Plaintiffs' request for punitive damages against Defendants City of Phoenix and Sullivan is **dismissed**.

(6) The remaining claims are Count I (wrongful death claim against Defendants City of Phoenix and Sullivan); Count II (Fourth and Fourteenth Amendment excessive force claim Defendants Ladines, Garza, and Roy); Count III (*Monell* claim against

Defendants City of Phoenix and Sullivan); Count V (gross negligence claim against the City of Phoenix); and Count VI (negligent hiring, supervision, retention, and/or training claim against Defendants City of Phoenix and Sullivan).

(7) Defendants **must answer** the remainder of the TAC within **14 days** of the filing date of this Order.

(8) All other matters in this action remain with the Magistrate Judge for disposition as appropriate.

Dated this 15th day of July, 2025.

Michael T. Liburdi
United States District Judge