# EXHIBIT 4

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Kashane Kirk, as Personal           )
Representative and on behalf of     )
the Estate of Leontae Kirk;         )
et al.,                             )
                                    )  No.:
          Plaintiffs,               )  CV-23-00836-PHX-MTL
                                    )  (CBD)
     vs.                            )
                                    )
City of Phoenix, a governmental     )
entity; et al.,                     )
                                    )
          Defendants.               )
_____)


DEPOSITION OF JACLYN RAVELO

Phoenix, Arizona
January 24, 2025


Prepared by:

Jody L. Lenschow, RMR, CRR
Certified Court Reporter
Certification No. 50192

CERTIFIED
TRANSCRIPT

Kashane Kirk vs. City of Phoenix                                CV-23-00836-PHX-MTL
Jaclyn Ravelo                        January 24, 2025                         2..5

**Page 2**

                    INDEX TO EXAMINATIONS
WITNESS                                         PAGE

JACLYN RAVELO

    EXAMINATION BY MR. WOODS            4
    EXAMINATION BY MS. BARNES          80
    RE-EXAMINATION BY MR. WOODS        81
    RE-EXAMINATION BY MS. BARNES       82

                    INDEX TO EXHIBITS

| NO. | DESCRIPTION | IDENTIFIED |
|---|---|---|
| Exhibit 1 | Incident Report KIRK 8-170 | 30 |
| Exhibit 2 | Ravelo Body Cam Footage | 38 |
| Exhibit 3 | Response to Resistance Operations Order Rev. 07/22 PPD-POLICIES 1-13 | 64 |
| Exhibit 4 | Loyalty Oath PPD-RAVELO 34 | 75 |
| Exhibit 5 | 11/2/2022 Media Advisory | 77 |

**Page 3**

                    DEPOSITION OF JACLYN RAVELO
was taken on January 24, 2025, commencing at 9:59 a.m., at the offices of Coash Court Reporting & Video, 1802 N. 7th Street, Phoenix, Arizona, before Jody L. Lenschow, RMR, CRR, Certified Reporter No. 50192 for the State of Arizona.

                    *   *   *

APPEARANCES:

    For the Plaintiffs:
            MILLS + WOODS LAW, P.L.L.C.
            By:  Mr. Sean A. Woods
                 5055 N. 12th Street
                 Suite 101
                 Phoenix, Arizona  85014
                 480-999-4556
                 swoods@millsandwoods.com

    For the Defendants:
            BROENING, OBERG, WOODS & WILSON, P.C.
            By:  Ms. Sarah L. Barnes
                 2800 N. Central Avenue
                 Suite 1600
                 Phoenix, Arizona  85004
                 602-271-7700
                 slb@bowwlaw.com

**Page 4**

                    JACLYN RAVELO,
called as a witness herein, having been first duly sworn by the Certified Court Reporter to speak the truth and nothing but the truth, was examined and testified as follows:

                    EXAMINATION

BY MR. WOODS:

    Q.    Hi.

    A.    Hello.

    Q.    Will you state your name for the record?

    A.    Jaclyn Ravelo.

    Q.    Do you go by Jackie?

    A.    Yes.

    Q.    Okay.  And do you mind if I call you Jackie today?

    A.    No, that's fine.

    Q.    Have you ever had your deposition taken before?

    A.    No, sir.

    Q.    So you heard me before the deposition say I was going to give her a bunch of uh-huhs.  The reason I said that is we need to speak verbal answers so that she can actually write down words, rather than noises and things like that.  Uhm.  She's also not -- I just said uhm. She's not going to be able to record head nods and

**Page 5**

things like that as well.

    A.    Okay.

    Q.    Do you understand?

    A.    Yes.

    Q.    Okay.  You may hear me say things like is that a yes.  I'm not trying to be mean.  I'm just -- just for the court reporter, okay.

          The other thing that I would say is if you need to take a break at any time, just let me know.

    A.    Okay.

    Q.    If I have a question pending out there, answer the question first and then we can take that break.

    A.    Okay.

    Q.    So whenever you need it, go ahead.

          What did you do to prepare for this deposition?

    A.    I talked to the attorney.

    Q.    Don't tell me what you said to her.

    A.    Okay.  Probably two, two or three times just over the past two years.  I saw the video the department put out and I read the notice of claim.

    Q.    The video, the one that came out as part of the critical incident?

    A.    Yes.

    Q.    And that's the one, just for my edification, that's the one that kind of had different portions from

**Page 30**

I don't know the guy's name.

Q.   And he was sitting in the car with you?

A.   Yes.

Q.   All right.  This is the incident report.  The Bates numbers didn't actually print on them so I went through and handwrote numbers every other page.  So I'm going to hand this to you.  This is going to be Exhibit, I guess, 1.

(Deposition Exhibit 1 was marked for identification.)

BY MR. WOODS:

Q.   Have you seen this document that's marked Exhibit 1, have you seen this before?

A.   No, I -- yeah, like after the incident I might have looked on like electronically, but I don't remember reading it.

Q.   Okay.  Let's turn to Page 104.  And, again, at the bottom of these pages there should be, but there's not printed, Bates stamps labeled KIRK underscore, you know, and then the number of the page.  And so what I did is I just handwrote the numbers on each page because, again, my printer for some reason didn't print those.

These were disclosed early on to defendants.  They were received as a response to my law firm's public

**Page 31**

record request.  I'm just making a record of that.

So we're at Page 104 now, and there is a table at the top, and right below it, it's in very tiny print, it says Narrative Information.  Do you see that?

A.   Yes.

Q.   Okay.  And then following that, there is kind of a header there that says Detective Shuck.  Do you see that?

A.   Yes.

Q.   And then it says even further down under the Interview Supplement that it was an interview with Jaclyn Ravelo, No. 10169.  Do you see that?

A.   Yes.

Q.   And that's your name?

A.   Yes.

Q.   And that's your badge number?

A.   Yes.

Q.   Okay.  And then date and time says November 2nd, 2022 at 2145 hours.  Do you see that?

A.   Yes.

Q.   Do you recall that being around the time that you did this interview?

A.   Yes.

Q.   And this was the only interview you did as part of this case?

**Page 32**

A.   Yes.

Q.   Let's go ahead and turn to the next page.  It's not marked at the bottom, but it's 105.  Towards -- let's see, one, two, three.  Let's go to the fourth paragraph that starts with "Officers Ravelo and Ladines were the first ground units to arrive."

Do you see that?

A.   Yes.

Q.   Is that an accurate representation of what you told Detective Shuck?

A.   Yes.

MS. BARNES:  Form.

THE WITNESS:  Sorry.

BY MR. WOODS:

Q.   Now, reading this, this is not a transcript, correct?

MS. BARNES:  Form, foundation.

BY MR. WOODS:

Q.   Like this isn't an exact, you know, Detective Shuck said this, then Jackie Ravelo said this, right?

A.   Correct.

MS. BARNES:  Same objections.

BY MR. WOODS:

Q.   And when you read this, is this more of like a summary of what the interview --

**Page 33**

A.   Yes.

MS. BARNES:  Same objections.

BY MR. WOODS:

Q.   In the next paragraph -- actually, let's stay in the paragraph we were just on.

In the third sentence and right in the middle of that paragraph, it starts with "They parked near the bus stop."  Do you see that?

A.   Yes.

Q.   Okay.  Then the next sentence -- actually, the last sentence of that paragraph says, "There was an unidentified person at the bus stop who quickly walked away after being asked to do so by Officer Ravelo."

Do you see that?

A.   Yes.

Q.   Do you recall seeing a person at the bus stop when you arrived?

A.   Not really.  Vaguely.

Q.   Okay, so vaguely.

Do you recall if he was sitting at the bus stop or standing at the bus stop?

A.   I don't -- I don't remember.

Q.   In the next paragraph it says, "Officer Ravelo was positioned near the front passenger side of their patrol vehicle when she observed an unknown person

**Page 34**

between the cellular phone store and the laundromat, taking cover behind cars."

Q.    Did I read that correctly?

A.    Yes.

Q.    Do you recall -- do you recall that being what you saw?

A.    I remember him in between the cars.  I don't know if that's the like exact wordage I used, but I remember it looked like he was like moving around or ducking between cars.

Q.    It says that you described him as a light-skinned black male wearing a dark long-sleeved shirt and light multi-colored shorts.

Is that what you recall on scene?

MS. BARNES:  Form.

THE WITNESS:  I don't really remember the clothing, other than -- like right now I don't remember the clothing description at the time, other than something about red.  I think there was red on -- whether it was on his shirt or his shorts.  But it wasn't like a blanket red.  It was -- I think that's where the multi-colored came in.

BY MR. WOODS:

Q.    There's a sentence that starts with "Officer Ravelo was unsure if Leontae was the subject of their

**Page 35**

call."

Do you see that?

A.    Yes.

Q.    Okay.  And then it says "as he did not match the description, comma, and she did not see Leontae with a weapon, period."

Is that correct?

A.    Yes.

Q.    To your recollection, is that summary an accurate depiction of what you remember?

A.    Not really.  Like at the time of this interview, I remember thinking after the fact when I was being interviewed, I think I was mixing up the descriptions of the complainant, like the caller, because they gave out two descriptions, the person with the gun and the caller, and I think at the time of the interview, I was mixing up in my head like their descriptions.

Q.    Do you recall -- and I think you already answered this, but I'll just ask it one more time.  You did see Leontae in the parking lot, correct?

A.    Yes.

Q.    Okay.  But you didn't see him holding a gun, correct?

MS. BARNES:  Form.

**Page 36**

THE WITNESS:  I did not see a gun.

BY MR. WOODS:

Q.    Okay.  Did he ever point a gun at you?

MS. BARNES:  Form.

THE WITNESS:  Not that I saw.

BY MR. WOODS:

Q.    Was he ever turned towards you?

A.    I don't remember.

Q.    Did he ever point his hand at you or any other officers?

A.    Not that I saw.

MS. BARNES:  Form and foundation to the last one.  Sorry.

MR. WOODS:  I paused because I thought that was coming.

BY MR. WOODS:

Q.    Do you recall, when you arrived on scene, any officers giving any type of warning to Leontae?

A.    I don't remember.  I know I was shouting the whole time.

Q.    Do you recall when you started shouting?

A.    I think when I was rounding out, but I don't remember specifically.

Can I take two minutes for a bathroom break?

**Page 37**

Q.    No, that's fine.

(A recess was taken.)

BY MR. WOODS:

Q.    During the break, did you and your attorney have a conversation?

A.    Yes.

Q.    Okay.  When you were first on scene, do you recall hearing any gunshots?

A.    Yes.

Q.    Okay.  Do you recall seeing Mr. Kirk firing any gunshots?

MS. BARNES:  Form, foundation.

Go ahead.

THE WITNESS:  I didn't see that, no.

BY MR. WOODS:

Q.    So when you first arrived on scene, was there any -- like right when you got there and got out of your car, was there any shooting going on?

MS. BARNES:  Form.

THE WITNESS:  Not that I could tell, no.

BY MR. WOODS:

Q.    When did you hear shooting?

A.    Like a few seconds after getting out of the car.

Q.    Was Autumn Ladines ahead of you when you guys

Case 2:23-cv-00836-MTL-CDB   Document 122-4   Filed 04/13/26   Page 6 of 6

Kashane Kirk vs. City of Phoenix                    CV-23-00836-PHX-MTL
Jaclyn Ravelo                    January 24, 2025              82..85

**Page 82**

A.   It looks like he's at the back of the vehicles.

Q.   Now, if we watch, just keep an eye on the man in red.

When does he go in between the vehicles?  Right there?

A.   Right now.

Q.   So at 16:29:52, correct?

MS. BARNES:  Form.

THE WITNESS:  Correct.

MR. WOODS:  Okay.  I have nothing further.

RE-EXAMINATION

BY MS. BARNES:

Q.   Okay.  Just to clarify, when you first saw him, when your eye picked him up, Mr. Kirk, he was already between the cars, correct?

A.   Yes.

Q.   Okay.  So you didn't see him or your eye didn't pick him up, even though it shows on your body cam that he was in the parking lot, right?

A.   Correct.

MS. BARNES:  Okay.  Good.

MR. WOODS:  We're good.

**Page 83**

MS. BARNES:  All right, we will read and sign.

Just condensed, please.  I do not need exhibits.

(The deposition concluded at 11:35 a.m.)

(Deposition Exhibit 2 was marked for identification.)

_____
JACLYN RAVELO

**Page 84**

STATE OF ARIZONA   )
COUNTY OF MARICOPA  )

BE IT KNOWN that the foregoing proceedings were taken before me; that the witness before testifying was duly sworn by me to testify to the whole truth; that the foregoing pages are a full, true, and accurate record of the proceedings, all done to the best of my skill and ability; that the proceedings were taken down by me in shorthand and thereafter reduced to print under my direction.

I CERTIFY that I am in no way related to any of the parties hereto, nor am I in any way interested in the outcome hereof.

[X] Review and signature was requested.
[ ] Review and signature was waived.
[ ] Review and signature was not requested.

I CERTIFY that I have complied with the ethical obligations set forth in ACJA 7-206(F)(3) and ACJA 7-206 (J)(1)(g)(1) and (2).  Dated at Phoenix, Arizona, this 3rd day of February, 2025.

_____
JODY L. LENSCHOW, RMR, CRR
Certified Reporter
Arizona CR No. 50192

**Page 85**

I CERTIFY that COASH COURT REPORTING & VIDEO, LLC has complied with the ethical obligations set forth in ACJA 7-206 (J)(1)(g)(1) through (6).

_____
COASH COURT REPORTING & VIDEO, LLC
Registered Reporting Firm
Arizona RRF No. R1228