Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
rmills@millsandwoods.com
*Attorneys for Plaintiffs*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Kashane Kirk, as Personal Representative and on behalf of the Estate of Leontae Kirk; Sharon Roberts, individually; Brittnie Turner, on behalf of and as legal guardian and parent of her minor child, MC,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Phoenix, a governmental entity; Michael Sullivan, Chief of the Phoenix Police Department; Autumn Ladines and John Doe Ladines, husband and wife; Officer Antonio Garza and Jane Doe Garza, husband and wife; Sergeant Eric Roy and Jane Doe Roy, husband and wife; Jaclyn Ravelo and John Doe Ravelo, husband and wife; Steven Ramirez and Jane Doe Ramirez, husband and wife, and; Jonathan Howard and Jane Doe Howard, husband and wife,<br><br>Defendants. | No.: CV-23-00836-PHX-MTL (CDB)<br><br>**PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT PURSUANT TO FED. R. CIV. P. 59(E), OR ALTERNATIVELY FOR RELIEF UNDER FED. R. CIV. P. 60(B)(1)**<br><br>(Assigned to the Honorable Michael T. Liburdi and referred to the Honorable Camille D. Bibles) |

Plaintiffs Kashane Kirk, as Personal Representative and on behalf of the Estate of Leontae Kirk, and Sharon Roberts (collectively, “Plaintiffs”), move under Rule 59(e) of the Federal Rules of Civil Procedure, and alternatively under Rule 60(b)(1), to alter or amend the Judgment (Doc. [136]) entered on the Court's September 14, 2026 Order

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

granting Defendants' Motion for Summary Judgment (Doc. 135) (the "Order"). This Motion is filed within fourteen days of the Order as LRCiv 7.2(g)(2) requires and within twenty-eight days of the Judgment as Rule 59(e) requires. Consistent with LRCiv 7.2(g)(1), this Motion does not repeat argument from Plaintiffs' Response (Doc. 121). It identifies, with specificity, five matters the Order overlooked or misapprehended, the new authority that is presented and why it was not presented earlier, and the specific modifications sought.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. THE STANDARD**

A Rule 59(e) motion may be granted where it "is necessary to correct manifest errors of law or fact upon which the judgment rests," where it "is necessary to prevent manifest injustice," or where "the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam)). This Court's local rule is substantially similar in that reconsideration is available on "a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence," and the motion must "point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court, any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought in the Court's Order." LRCiv 7.2(g)(1). Alternatively, Rule 60(b)(1) permits relief from a

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

judgment for "mistake," and "a judge's errors of law are indeed 'mistake[s]' under Rule 60(b)(1)." *Kemp v. United States*, 596 U.S. 528, 142 S. Ct. 1856, 1860 (2022).

## II. MATTERS OVERLOOKED OR MISAPPREHENDED

### A. The Order's own findings from the body camera footage establish a genuine dispute as to Officer Garza and Sergeant Roy, and the Order's contrary conclusion cannot be reconciled with them.

The Order correctly states the governing rule that where the record includes video, the Court "considers the facts in the light depicted by the video but still draws all inferences from the video in the plaintiff's favor," and adopts the video's version only where a party's account is "blatantly contradicted" by it. Order at 15-16 (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)). The Order improperly found that Plaintiffs' account was contradicted by the video.

As to Officer Garza, the Order found from his own camera that "[a]t 16:30:03, Leontae appears from between two vehicles," that "Leontae is on his backside on the sidewalk in front of the store and appears to have his hands in the air," that "Leontae does not appear to have anything in his hands," and that "Garza shoots Leontae several times as Leontae covers his head with his hands." Order at 11 (citing DSOF Ex. I at 00:57-01:02). As to Sergeant Roy, the Order found that "[i]t is impossible to tell from Roy's body worn camera footage whether Leontae had an arm outstretched or had anything in his hands before Roy shot him." Order at 11.

Twenty-two pages later, the Order concludes that "Defendants' accounts are internally consistent with one another and are not contradicted by the video evidence," and that "each Defendant engaged in the same conduct: shooting a suspect . . . whom they

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

reasonably believed was still armed." Order at 33. That conclusion misapprehends the facts and the Order's own findings in two respects.

First, Garza's account is contradicted by the video as the Court described it. Garza told investigators that he fired because he believed Kirk "intended to continue to flee," Order at 6, and Defendants' motion asserted that Garza "saw Kirk armed with a gun," Doc. 109 at 5 (citing DSOF ¶ 28). The Court found that Garza's camera shows a seated man with his hands in the air and nothing in them, covering his head as the rounds struck him. Order at 11. Garza himself told investigators he "couldn't see [Kirk's] hands," and Plaintiffs' police practices expert, a retired Phoenix Police lieutenant, reviewed the same footage and concluded there was no weapon visible in Kirk's hands when Garza opened fire. CSOF ¶ 28. Under the standard the Order adopted, a reasonable jury viewing that footage could find that Kirk posed no immediate threat when Garza fired. That is a genuine dispute of material fact, and it is dispositive of Garza's motion under the very authority the Order quotes that "if the suspect doesn't reach for his waistband or make some similar threatening gesture, it would clearly be unreasonable for the officers to shoot him . . . ." *Cruz v. City of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014) (cited at Order 19).

Second, the finding that Roy's footage makes it "impossible to tell" whether Kirk had anything in his hands is a finding of ambiguity. Under Rule 56 and the Order's own statement of the standard, ambiguity in the video is resolved for the nonmovant. Order at 15. The Order instead resolved it for Roy, crediting his report that Kirk “emerged crouched down and sliding backward," Order at 21, and treating that posture as a basis for a reasonable belief that Kirk was armed. But Roy testified that he did not see a gun when he

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

fired and that his belief rested on "positioning" and "body language" alone. CSOF ¶¶ 44-45; Order at 7. The Ninth Circuit has "held over and over that a suspect's possession of a gun does not itself justify deadly force," *Calonge v. City of San Jose*, 104 F.4th 39, 48 (9th Cir. 2024), and the Order itself cites *Calonge* for the proposition that "mere possession of a gun did not justify the use of deadly force." Order at 19. A crouching posture, with no weapon seen, is less than possession.

The Order also overlooked evidence that bears directly on whether the officers' accounts are "consistent with other known facts," which the Order recognized the Court "must carefully examine . . . ." Order at 20 (quoting *Cruz*). Officer Ravelo arrived in the same vehicle as Officer Ladines, and testified she never saw Kirk with a gun and did not fire for that reason. *See* CSOF ¶ 46. Her camera shows her raising her weapon and not firing, then spending the next minute asking whether Kirk had a gun. Order at 9-10. Ladines and Garza each told investigators they watched Kirk fire his weapon. Order at 5-6. It is undisputed that he never fired. Order at 5, 21. *Cruz* holds that where the officers' account is contradicted by circumstantial evidence, a jury may disbelieve it, and that the absence of a gun on the decedent is exactly such evidence. 765 F.3d at 1079. The Order cites that rule and does not apply it. *Calonge* reversed a grant of qualified immunity on precisely this footing. *Calonge* was "unusual in that other officers on the scene contradict key facts asserted by the officer who used deadly force," and the court resolved those facts for the plaintiff because two officers watching the same man saw no threatening movement. 104 F.4th at 42, 45. This is exactly what happened here with Ravelo's account. She did not see

Leontae with a weapon and not only had the time to assess, but chose not to fire her lethal weapon because of that fact.

**B. <u>The Order applied an inverted summary judgment standard to the warning question and overlooked the evidence that a warning was feasible.</u>**

The Order found it undisputed that no officer warned Kirk or identified as police before firing. Order at 24. It then resolved the feasibility question, stating "[g]iven the rapidity at which the events unfolded, a reasonable jury could conclude that warnings were not 'feasible' or 'practicable.'" Order at 25. Whether a reasonable jury could find for the movants is not the Rule 56 inquiry. The inquiry is whether a reasonable jury could find for Plaintiffs, and if so the question goes to the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); Order at 3.

On that question the Order overlooked the record. Plaintiffs' police practices expert, a retired Phoenix Police lieutenant, testified that "[a]ll those officers had plenty of time" to warn, *see* CSOF ¶ 80, and opined that "there was absolutely no reason" not to announce and warn given the "time, distance, cover, and backup available," CSOF ¶ 70. Roy testified that he lacked time to warn, yet in the same deposition that he had time to watch Kirk crouch, slide backward, and push himself along the ground before firing. CSOF ¶¶ 53-54. Roy fired from 79 feet by one account and 120 to 150 feet by another. Order at 7. Garza fired from behind a pony wall through a rifle scope. *See* CSOF ¶ 32. Ladines fired from 62 feet at a man facing away from her. Order at 6; CSOF ¶ 58. The Order does not mention the expert's opinions on feasibility or on any other point. The Ninth Circuit has "held en banc that '[a] rational jury could rely upon such [expert] evidence in assessing whether the officers' use of force was unreasonable.'" *Glenn v. Washington County*, 673 F.3d 864, 877

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

(9th Cir. 2011) (quoting *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc)). Defendants' Reply relied on the expert's acknowledgments that the officers faced a difficult situation and that a man with a gun has the means to hurt someone. Doc. 130 at 7, 10. Neither is a concession that any officer saw a threat at the moment he fired, and neither answers his testimony that every officer had time to warn. Weighing those statements against each other is the province of the factfinder.

The Order's own authorities set the consequence. A warning must be given prior to use of deadly force "whenever practicable," *Gonzalez v. City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014) (en banc) (cited at Order 24), and the failure to warn "weighs against" the officers, *Sabbe v. Wash. Cnty. Bd. of Comm'rs*, 84 F.4th 807, 825 (9th Cir. 2023) (cited at Order 24). *Calonge* found a warning "clearly practicable" where the officer had time to warn his fellow officers before firing, 104 F.4th at 47, and *Harris v. Roderick* held that shooting an armed man "without any warning, as he was retreating toward an area of safety," was "patently unreasonable" and "violated clearly established law," 126 F.3d 1189, 1204 (9th Cir. 1997). On this record the feasibility of a warning was, at minimum, a jury question.

**C. <u>The qualified immunity analysis was not conducted officer by officer, and the controlling precedent the Court was obligated to consider was not applied.</u>**

The Order correctly states that liability "may not be imposed based on a team effort theory that would allow the jury to lump all the defendants together," Order at 32 (quoting *Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022)), and states that the Court "has undertaken an individualized assessment" of each officer, citing the partial dissent in *Gonzalez v. City of Phoenix*, 163 F.4th 1289, 1305 (9th Cir. 2026). Order at 32. The

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

analysis that follows treats the three officers as one: "each Defendant engaged in the same conduct," and "there is no meaningful distinction between Defendants Ladines, Garza, and Roy's conduct." Order at 33. That is not an individualized assessment; it is the lumping *Peck* prohibits. It imputes Ladines's observation of a gun at 16:29:44 to Garza, who fired at 16:30:03 at a man the Court found had nothing in his hands, and to Roy, who admitted he saw no gun. Each officer's immunity turns on what that officer saw and knew at the moment that officer fired. *Peck*, 51 F.4th at 888-91.

The Order's reliance on the *Gonzalez* partial dissent also misapprehends that decision. The majority in *Gonzalez*, on appeal from this Court, affirmed the denial of qualified immunity and rejected the dissent's segmentation of the officers' conduct, holding that the transporting officers' actions "cannot be segmented away so neatly" and that a court "must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." 163 F.4th at 1304 (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)). *Gonzalez* applied *Tolan* to hold that the clearly established inquiry must proceed on the plaintiff's version of the facts. *Id.* The Order defined the context here on Defendants' version: officers who "reasonably believed [Kirk] was still armed." Order at 33. On Plaintiffs' version, which the Court's own video findings support, Garza shot a seated man with his hands up and empty, and Roy emptied a seventeen-round magazine over six seconds into a man he could not see holding a weapon.

The Order did not consider controlling precedent that resolves the clearly established prong. The Supreme Court requires a court deciding qualified immunity to use its "full knowledge of its own [and other relevant] precedents," because whether a right

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

was clearly established "presents a question of law." *Elder v. Holloway*, 510 U.S. 510, 516 (1994). The Ninth Circuit applied *Elder* in *Calonge* to hold that a plaintiff who "argued in the district court that the law was clearly established but did not cite analogous cases" was entitled to have the analogous cases considered on appeal, and that the relevant cases "directly controlled" the analysis "without elaboration." 104 F.4th at 48-49. Those cases, each decided years before November 2, 2022, include:

*Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991): officers "could not reasonably have believed the use of deadly force was lawful because Curnow did not point the gun at the officers and apparently was not facing them when they shot him the first time." Ladines shot Kirk in the back from 62 feet while he faced away from her. Order at 6; CSOF ¶ 58.

*Harris*, 126 F.3d at 1204: "Law enforcement officials may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed," and a warning must be given "[w]henever practicable."

*George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013): the fact that a "‘suspect was armed with a deadly weapon’ does not render the officers' response per se reasonable," and where the evidence conflicts on whether the decedent pointed the weapon, a court "can neither credit the deputies' testimony . . . nor assume that he took other actions that would have been objectively threatening."

*Cruz*, 765 F.3d at 1078-79: absent a reach or "similar threatening gesture," shooting "would clearly be unreasonable," even where the officers reasonably believed the suspect was armed and he had behaved dangerously before the stop.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

*Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1008-11 (9th Cir. 2017): qualified immunity denied where a deputy shot a boy carrying what appeared to be an AK-47 seconds after a single command, because the boy "did not 'point the weapon at the officers or otherwise threaten them with it,'" and the deputy's account was inconsistent with the physical evidence.

*Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017): "terminating a threat doesn't necessarily mean terminating the suspect"; once a suspect is down, "a reasonable officer would reassess the situation rather than continue shooting," and continued fire after the threat ends "violated long-settled Fourth Amendment law." Roy fired seventeen rounds over six seconds at a man who was seated and sliding backward, and never saw him raise a weapon. CSOF ¶¶ 25, 56-57. Phoenix trains its officers to "shoot a few rounds center mass and then assess the threat before continuing to fire," because "continuing to fire would effectively negate an officer's ability to assess a continuing imminent threat"; emptying a magazine without pause violated that training. CSOF ¶¶ 25, 59.

*Peck*, 51 F.4th at 882, 888: deputies responding to a 911 report of a man "threatening someone with a firearm" were denied qualified immunity because a jury could find the decedent was not reaching for the gun; "where . . . a jury could find that no such movement occurred, our cases clearly establish that the use of deadly force would be impermissible."

The Order cites *Peck*, *Cruz*, *George*, and *Calonge*. Order at 19, 32. It does not apply them to the facts found from the video. Instead, it incorrectly holds that "[t]his case is like *Long* in almost every relevant respect." Order at 33. In *Long v. City & County of Honolulu*, 511 F.3d 901 (9th Cir. 2007), the officer knew the suspect "had previously shot at a car full

of people and wounded two people therein earlier that night," fellow officers radioed that the suspect was "shooting at them," and the court had "the benefit of multiple eye witnesses" and a dispatch record that "fairly accurately recorded" events. *Id.* at 906; Order at 32-33. Here no one had been shot, the only non-police eyewitness on scene saw no gun, the dispatch record relayed a helicopter observer's admitted "perception," CSOF ¶ 50, and the video shows what the officers allege they could not see. *Peck* is the actual analog with a 911 report of a man with a gun, erratic conduct, and a jury question about what he was doing when the deputies fired.

Plaintiffs' Response cited *Tennessee v. Garner*, *Deorle v. Rutherford*, and *Glenn* as the clearly established law. Doc. 121 at 10-11. The additional cases are presented for three reasons. The Court's obligation under *Elder* to consider all relevant precedent does not depend on the parties' citations. The Order itself invoked *Cruz*, *Calonge*, *Peck*, and *Gonzalez*, and Plaintiffs are entitled to address the Court's application of those authorities. And the officer-by-officer framework, which requires matching each officer's conduct to precedent, appeared for the first time in the Order.

**D. The Order relied on *Motley v. Parks* without giving Plaintiffs an opportunity to respond, and *Motley* does not support the Order's conclusion.**

Defendants did not cite *Motley v. Parks*, 432 F.3d 1072 (9th Cir. 2005) (en banc). The Order raised it to hold that Ladines, Garza, and Roy were entitled to rely on the dispatch report of an "active shooter." Order at 22. Plaintiffs address it now for the first time because they had no earlier opportunity.

*Motley* concerned officers' reliance on information from other officers about a parolee's residence to justify a warrantless parole search. Even there, the court held that



MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

"all officers . . . have an ongoing duty to make appropriate inquiries regarding the facts received or to further investigate if sufficient details are relayed," and that the "lynchpin is whether the officer's reliance on the information was objectively reasonable." Order at 22 (quoting *Motley*, 432 F.3d at 1081-82). Nothing in *Motley* holds that a dispatch report authorizes an officer to disregard what is in front of him when he decides to fire. The Ninth Circuit's rule is the opposite in that an officer is charged with the facts relayed to him and with what he could see, and no more. *Calonge*, 104 F.4th at 45 n.3. What was relayed here was Officer Ramirez's report, which Ramirez later admitted was what he "perceived," not what he confirmed. CSOF ¶ 50. What was not relayed was Sergeant Howard's observation, from the same helicopter, that Kirk "looked to be exchanging gunfire with someone," which would have told the ground units that Kirk may have been responding to an armed threat rather than creating one. CSOF ¶¶ 10, 51. And what each officer could see when he fired is, on the Court's own findings, a seated man with empty hands (Garza) and a man with nothing visible in his hands (Roy). Order at 11. Phoenix trains its officers that "each officer has an individual duty to assess the imminent threat that's presented to them and not rely upon another officer shooting . . . ." CSOF ¶ 59. *Peck* confirms that a 911 report that a man was threatening others with a gun does not license deadly force absent a threatening movement when the officers fire. 51 F.4th at 888. A dispatch report thirty seconds earlier does not convert the shooting of an unarmed seated man with his hands up into a reasonable seizure.

**E. <u>The medical aid ruling misreads *Ryan v. Napier* and overlooks that the theory rests on omissions after the force ended</u>.**

The Order holds that "the need for medical aid only arose because of the intentional shooting," so that "whatever conduct Defendants Ladines, Garza, and Roy engaged in is inextricably linked with the intentional shooting and cannot support a gross negligence claim." Order at 36-37. That is an erroneous reading of *Ryan v. Napier* and the facts. It is but-for causation, and it is not the test *Ryan v. Napier* adopted. *Ryan* holds "[t]o be clear, plaintiffs may plead a negligence claim for conduct that is independent of the intentional use of force or plead negligence and battery as alternate theories if the evidence supports each theory." 245 Ariz. 54, 425 P.3d 230, 238, ¶ 31 (Ariz. 2018). The Order acknowledges the principle, Order at 36-37 (citing *Ryan*, 425 P.3d at 233), but applies a rule under which no post-force omission could ever be independent, because every such omission follows the force in time.

Plaintiffs' medical aid theory does not challenge the decision to shoot. It challenges what the officers did after the last round was fired at 16:30:07. No life-saving measures were started for four minutes. No call was made to Fire for thirteen minutes although Fire was staged nearby. Garza ordered Officer Ravelo away from Kirk after she approached to render aid. CSOF ¶ 63; Order at 5. Those omissions are governed by a distinct standard of care that "life is the highest priority," and officers must provide medical care "as soon as reasonably practicable." *See* CSOF ¶ 76. These are standards that the Department sets itself. That is the "factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care" on which *Ryan* itself said a negligence count may go to the jury. 425 P.3d at 238, ¶ 29 (citing *District of Columbia*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

*v. Chinn*, 839 A.2d 701, 711 (D.C. 2003)). Judge Rash reached that result last year in a police shooting case where he dismissed a gross negligence count that rested on the shooting itself, and in the same order held that allegations that the officer "failed to render life-saving medical aid and prevented others from rendering life-saving medical aid" stated a plausible, separate claim. *Hernandez v. Cnty. of Santa Cruz*, No. CV-24-00353-TUC-SHR, slip op. at 17-18 (D. Ariz. Aug. 29, 2025). *Hernandez* predates Plaintiffs' Response and is cited not as new authority but as an application of *Ryan* ¶ 31 that illustrates the error in the Order's reading of it; the manifest error is in the reading of *Ryan*, which both sides briefed.

Defendants' motion attacked this theory on a different ground, causation. Doc. 109 at 21-22. The Order did not reach that argument. If the Court is inclined to consider it on reconsideration, Plaintiffs request the opportunity to respond that LRCiv 7.2(g)(2) contemplates before any motion for reconsideration is granted or the alternative ground is adopted.

## III. CONSEQUENCES FOR THE REMAINING CLAIMS

The Order disposed of the *Monell* claim (Count III), the negligent training claim (Count VI), and the wrongful death and survival claims (Count I) solely because it found no underlying constitutional violation or tort. Order at 34, 37-38. If the Court amends its ruling on Count II as to any officer, those claims must be reinstated for the same reason they were dismissed. The Court did not reach the City's alternative arguments on custom, practice, or training, and Plaintiffs do not ask it to do so on this Motion. Plaintiffs note only that a municipality's liability under *Monell* does not depend on the individual officers'

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

immunity: "[a] municipality may be liable if an individual officer is exonerated on the basis of the defense of qualified immunity, because even if an officer is entitled to immunity a constitutional violation might still have occurred." *Horton v. City of Santa Maria*, 915 F.3d 592, 604 (9th Cir. 2019). If the Court finds a triable constitutional violation but adheres to its qualified immunity ruling, Count III must nonetheless be reinstated.

## IV. SPECIFIC MODIFICATIONS SOUGHT

Plaintiffs request that the Court:

1. Vacate the Judgment (Doc. [136]).
2. Amend the Order (Doc. 135) to deny Defendants' Motion for Summary Judgment (Doc. 109) as to Count II against Defendants Garza and Roy, and against Defendant Ladines, on the ground that genuine disputes of material fact preclude summary judgment on both the constitutional violation and the clearly established prongs of qualified immunity.
3. Amend the Order to deny the Motion as to Count III, Count VI, and Count I to the extent those claims were dismissed as derivative of Count II.
4. Amend the Order to deny the Motion as to Count V insofar as Count V rests on the failure to summon and render medical aid after the use of force ended, and, if the Court intends to consider Defendants' alternative causation argument, order a response under LRCiv 7.2(g)(2) before doing so.
5. In the alternative, if the Court is not inclined to grant the foregoing on the papers, order a response from Defendants and set the Motion for oral argument.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## V. CONCLUSION

The Order's findings from the video, its statement of the summary judgment standard, and the authorities it cites all show that Summary Judgment was unwarranted because there are many issues of fact that a reasonable juror could find in Plaintiffs' favor. The Court's conclusions decided disputed material facts despite this. Plaintiffs respectfully ask the Court to alter or amend the Judgment as set out above.

**RESPECTFULLY SUBMITTED** this 28th day of September 2026.

**MILLS + WOODS LAW, PLLC**

By *_/s/ Sean A. Woods_*
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
*Attorneys for Plaintiffs*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Sarah L. Barnes
slb@bowwlaw.com
Jeremiah M. Sullivan
jms@bowwlaw.com
**BROENING OBERG WOODS & WILSON, P.C.**
kel@bowwlaw.com
szb@bowwlaw.com
rla@bowwlaw.com
2800 N Central, 16th Floor
Phoenix, AZ 85004
*Attorney for Defendants City of Phoenix, Sullivan, Ladines, Garza, Roy, Makic, Ravelo, Ramirez, Howard, Traylor, and Reddy*

*/s/ Ben Dangerfield*