LAW OFFICES
BROENING OBERG WOODS & WILSON
PROFESSIONAL CORPORATION
2800 NORTH CENTRAL, 16TH FLOOR
PHOENIX, AZ 85004
(602) 271-7700
Sarah L. Barnes /Bar No. 020362
Kelley M. Jancaitis /Bar No. 025555
Jeremiah M. Sullivan /Bar No. 038569
E-mail:slb@bowwlaw.com
kel@bowwlaw.com
jms@bowwlaw.com
emb@bowwlaw.com
*Attorneys for Defendants City of Phoenix, Sullivan, Ladines, Garza, Roy, Makic, Ravelo, Ramirez, Howard, Traylor, and Reddy*

**IN THE UNITED STATES DISTICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Kashane Kirk, *et al.*,

Plaintiffs,

vs.

City of Phoenix, *et al.*,

Defendants.

Case No. CV 23-00836-MTL (CDB)

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT (DOC. 137)**

Defendants, by and through undersigned counsel, hereby file this Response in opposition to "Plaintiffs' Motion to Alter or Amend the Judgment Pursuant Fed. R. Civ. P. 59(e), or Alternatively for Relief Under Fed. R. Civ. P. 60(b)(1)" (the "Motion"). (Doc. 137.) For all of the reasons briefed below, Plaintiffs' Motion should be denied. This Response is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Motion is an impermissible attempt by Plaintiffs to get a second bite at the apple after the Court granted Defendants' Motion for Summary Judgment. After full briefing and

review of the relevant evidence of the incident involving Mr. Kirk, the Court granted Defendants' Motion for Summary Judgment on every claim, holding that: the use of force was objectively reasonable; the remaining individual Defendants are independently entitled to qualified immunity; and that Plaintiffs' Monell and state-law claims fail for want of an underlying violation or tort. (Doc. 135.) Plaintiffs now ask the Court to revisit each of those rulings. But a motion under Rule 59(e), or alternatively Rule 60(b)(1), "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485, n.5, 128 S. Ct. 2605 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127–128 (2d ed.1995) (footnotes omitted)). Yet, that is precisely what the Motion is attempting. Most of Plaintiffs' arguments are premised on the incorrect belief that the Court "overlooked or misapprehended" the evidence and law. One of Plaintiffs' arguments identifies seven cases that were not cited in Plaintiffs' Response and are factually distinguishable. In short, Plaintiffs seek to reargue issues the Court has already considered and decided, as well as to present case law they did not previously present but could have, and which is nevertheless inapposite. And disagreement with how the Court weighed the record and applied the law is not manifest error; such disagreement is not a ground for altering or amending the Judgment. The Motion should be denied.

## II. LEGAL STANDARD.

Amending a judgment under Rule 59(e) "remains 'an extraordinary remedy which should be used sparingly.'" *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255, n. 1 (9th Cir.1999)). A Rule 59(e) motion may be granted on only four (4) grounds: "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an

intervening change in controlling law." *Id.* Motions for reconsideration pursuant to Rule 59(e) "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed *clear error*, or if there is an intervening change in the controlling law." *McDowell*, 197 F.3d at 1255 (emphasis in original); *see also* LRCiv 7.2(g)(1). Like Rule 59(e), Rule 60(b) provides, "On motion . . . the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1). A Rule 60(b) motion "is not meant to be a substitute for an appeal[,]" and relief is improper "if the aggrieved could have reasonably sought the same relief by means of appeal." *Inland Concrete Enters., Inc. v. Kraft*, 318 F.R.D. 383, 406 (C.D. Cal. 2016) (quoting *Hibbard v. Penn–Trafford Sch. Dist.*, 621 Fed.Appx. 718, 723 (3d Cir. 2015)).

Critically, Rule 59(e) and Rule 60(b) motions "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis in original) (discussing Rule 59(e)); *see also Cromwell v. Thornell*, 817 F. Supp. 3d 809, 811 (D. Ariz. 2026) (recognizing a similar standard for Rule 60(b) and that motions for reconsideration may not be used to ask the court "to rethink what the court had already thought through—rightly or wrongly").

Measured against these standards, each of Plaintiffs' arguments fail.

**III. ARGUMENT**

Plaintiffs' arguments do not identify any new evidence or an intervening change in the law. Instead, Plaintiffs' Motion is premised almost exclusively on the incorrect belief that the Court overlooked or misapprehended certain matters when granting Defendants' Motion for Summary Judgment. (Doc. 137, at 3-14.) The sole argument advanced by Plaintiffs that identifies case law not cited in the parties' summary judgment briefing concerns seven cases that Plaintiffs maintain the Court overlooked when the Court

conducted its qualified immunity analysis. (Doc. 137, at 9-10.) Further, upon closer inspection, these cases do not support altering the qualified immunity inquiry conducted by the Court. *See* Section III.C, *infra*. Additionally, Plaintiffs attempt to raise new cases on the issue of qualified immunity, which were published long before Plaintiffs filed their Response, runs contrary to established Ninth Circuit precedent, which prohibits raising new arguments that "could reasonably have been raised earlier in the litigation. *Kona Enterprises*, 229 F.3d at 890. Contrary to Plaintiffs' contentions, the Court's Order granting Defendants' Motion for Summary Judgment was sound based on the relevant facts and law. Plaintiffs attempt to rehash issues that were properly decided by the Court should be denied.

### A. Plaintiffs' Body Worn Camera Footage Argument Seeks to Relitigate Issues Already Considered by the Court

Plaintiffs contend that the Court's findings from Officer Garza's and Sergeant Roy's body-worn cameras create a genuine dispute that cannot be reconciled with the Court's conclusion. (Doc. 137, at 3-6.) The Court made no such error; it considered the very footage Plaintiffs cite and resolved the issue against them. The Court reviewed Officer Garza's and Sergeant Roy's footage, noted that Mr. Kirk did "not appear to have anything in his hands[,]" and that after deploying lethal force, Officer Garza stated he could not see the gun. (Doc. 135, at 11.) The Court further noted that Roy's footage made it "impossible to tell" whether Leontae had anything in his hands. (*Id.*) With those findings before it, the Court nonetheless held that the second *Graham* factor "examines what officers reasonably perceived at the time they employed deadly force," that each officer had seen Leontae armed just moments earlier, and that "[f]rom Defendants' perspective, a reasonable officer could have concluded that Leontae was still armed when he emerged from between the parked cars." (*Id.* at 21.) Indeed, Defendants Roy, Garza, and Ladines responded to dispatches report of an active shooter and observed Kirk waiving a gun around in the public

strip-mall parking lot. (Doc. *Id.* at 22.) As stated by the Court "[f]rom the perspective of Defendants, a reasonable officer could have concluded that the subject of the call was armed and actively shooting and therefore posed an immediate threat to safety." (*Id.*) Moreover, as the Court further recognized in its qualified immunity analysis, whether Mr. Kirk "had discarded his firearm before Defendants Garza and Roy shot him is '*immaterial*'" from the perspective of a reasonable officer confronting a reportedly active shooter in under thirty seconds. (*Id.* at 33 (emphasis added).)

Despite the Court's consideration of all of the relevant evidence in the record, Plaintiffs focus on Officer Ravelo's testimony that she did not see a gun and did not fire for that reason. (Doc. 137, at 5.) Plaintiffs maintain that Officer Ravelo's testimony presents contradictory evidence that a jury could consider when deciding whether Kirk was armed with a gun. (*Id.*) But as stated in Defendants' briefing, the Court "need not entertain [the] factual fiction" that Defendants "did not actually see a firearm in [Leontae's] hand[.]" (Doc. 109, at 7.) Defendants Roy, Garza, and Ladines' testimony is supported by contemporaneous video footage of Kirk waiving a gun around in a parking lot. The fact that one officer did not see a gun does not mean other officers did not observe Kirk with a firearm and Officer Ravelo's perception cannot be imputed to the other Defendants.

Plaintiffs simply disagree with how the Court drew the reasonable-officer inference from the video. That is argument for appeal, not a manifest error of fact or law. Reconsideration is not appropriate to request that the Court "rethink what [it] had already thought through—rightly or wrongly." *Cromwell*, 817 F. Supp. 3d at 811 (citation omitted). Plaintiffs' first ground for reconsideration identifies no overlooked fact and no clear error; it reargues the central issue the Court decided.

### B. Plaintiffs' Warning Argument Reargues a Decided Point and Ignores the Court's Independent Holdings

Plaintiffs argue that the Court applied an "inverted" summary-judgment standard

when it observed that "a reasonable jury could conclude that warnings were not 'feasible' or 'practicable,'" and that it overlooked their expert's opinion on feasibility. (Doc. 137, at 6-7.) This too was fully litigated: the parties briefed feasibility, and the Court expressly addressed warnings as one of the "other factors" in the totality analysis, noting it was undisputed no warning was given but that, "[g]iven the rapidity at which the events unfolded," warnings may not have been feasible given that "less than 30 seconds elapsed" from arrival to the last shot. (Doc. 135, at 25.) More fundamentally, the warning factor was not dispositive based on the totality of the circumstances. Indeed, the Court held that, "[c]onsidering the totality of the circumstances, the force used was objectively reasonable[,]" and thus, reconsideration of the Court's ruling is not warranted. (*Id*. at 26.)

Plaintiffs also rely upon their police practices expert's testimony that the individual officers "had plenty of time to warn" and opined that "there was absolutely no reason" not to warn. (Doc. 137, at 6.) This evidence was cited in Plaintiffs' Response, (*see* Doc. 121, at 11), and before the Court when considering Defendants' Motion for Summary Judgment. In other words, this is not new evidence that the Court did not already consider. And even if the Court were inclined to reconsider this evidence now, as argued in Defendants' Reply, Plaintiffs' police practices expert testified that: (1) if dispatch reports an active shooter, his "interpretation is they've actually fired their weapon and presumably at innocent bystanders"; (2) the proper protocol for responding to an active shooter scenario is to "eliminate the threat[,]" which means "respond and present whatever force is warranted to get that threat to stop"; and (3) that Defendants Roy, Garza, and Ladines were "put in an unmeasurably difficult situation". (Doc. 132, at 6-7.)

As a final point, even if the Court were inclined to reconsider its holding based on Plaintiffs incorrect belief that the Court applied the wrong legal standard for summary judgment, the Court recognized that "even if the Court found a Fourth Amendment violation," the officers "are entitled to qualified immunity." (*Id.* at 26.) Accordingly, the

Court's ruling rested on independent, adequate grounds, and, thus, the Order is not rendered manifestly erroneous because of Plaintiffs' belief that a technical imprecision exists in the discussion of a single non-dispositive factor regarding warnings. Plaintiffs' second ground for seeking reconsideration is, at most, a disagreement with the Court's reasoning, which is an insufficient basis to seek reconsideration.

### C. Plaintiffs' Qualified Immunity Argument Rests Upon a Mere Disagreement with the Court's Qualified Immunity Analysis and Identifies Authorities that Are Inapposite and Should Have Been Identified by Plaintiffs' Earlier

Plaintiffs assert that the Court failed to conduct an officer-by-officer qualified-immunity analysis and did not apply controlling precedent. (Doc. 137, at 7–11.) The record refutes the first point. The Court recited the rule against "team effort" liability and stated that it "has undertaken an individualized assessment as to whether each of the remaining Defendants, Ladines, Garza, and Roy, are entitled to qualified immunity." (Doc. 135, at 32.) It then found, on the facts, that "each Defendant engaged in the same conduct: shooting a suspect whom they knew had been armed with a gun seconds earlier, whom they had been told was an 'active shooter,' and whom they reasonably believed was still armed[,]" such that "there is no meaningful distinction between Defendants Ladines, Garza, and Roy's conduct." (*Id.* at 33.) That a common set of facts yielded a common result is a conclusion Plaintiffs dislike; it is not a failure to analyze the officers individually.

Next, Plaintiffs argue that the Court "did not consider controlling precedent that resolves the clearly established prong." (Doc. 137, at 8.) This argument fails for two reasons. First, as an initial matter, Plaintiffs "ha[ve] the burden to show that the right was clearly established at the time of the alleged violation under the second prong of the analysis." *Goff v. Arizona*, 526 F. Supp. 3d 551, 567 (D. Ariz. 2020). Plaintiffs' Response cited only *Garner*, *Deorle*, and *Glenn* as the clearly established law, (*see* Doc. 121, at 10-1) and the Court addressed each (*see* Doc. 135, at 30-32). The Motion now presents

*Curnow*, *Harris*, *George*, *Cruz*, *Estate of Lopez*, *Zion*, and *Peck* as the controlling authority the Court supposedly overlooked — authority Plaintiffs concede they did not previously cite. (Doc. 137, at 9-11.) Each of those decisions not only predate the November 2, 2022, incident, but were available when Plaintiffs filed their Response. Plaintiffs' failure to cite these additional cases in their Response evidences an improper attempt to get a second bite at the apple on the qualified immunity argument and warrants denying the Motion. *See generally Kona Enterprises, Inc.*, 229 F.3d at 890 (recognizing that Rule 59(e) motions should not be used to raise arguments that "could reasonably have been raised earlier in the litigation"); *Cromwell*, 817 F. Supp. 3d at 811 (recognizing a similar standard under Rule 60(b)). It was Plaintiffs' burden to "point to prior case law that articulates a constitutional rule specific enough" to defeat immunity, (Doc. 135, at 27), and the Court correctly held they failed to identify "a single precedent — much less a controlling case or robust consensus of cases — finding a Fourth Amendment violation 'under similar circumstances.'" (*Id.* at 32.) Plaintiffs cannot now cure that failure through a post-judgment motion.

Second, even if the Court had not previously considered these cases, they are insufficient to establish the clearly established prong of the qualified immunity analysis because they are factually inapposite to the incident involving Mr. Kirk. In *Curnow v. Ridgecrest Police*, police officers broke down a door to confront a domestic violence suspect. 952 F.2d 321, 323 (9th Cir. 1991). The officers claimed that as they entered through the doorway, the suspect picked up a gun and raised it as he began to turn towards the officers. *Id.* But for summary judgment purposes, the Ninth Circuit accepted as true the contrary testimony of a witness who claimed the suspect did not have the gun in his hand, did not raise his arm, and did not turn toward the officers. *Id.* The officers ultimately shot the suspect in the back. *Id.*

Next, in *Harris v. Roderick*, a case related to the infamous Ruby Ridge standoff, the

FBI's special hostage rescue unit was dispatched in response to an evolving crisis situation. 126 F.3d 1189, 1193 (9th Cir. 1997). Unbeknownst to the suspects, a hidden FBI sniper attempted to shoot a male suspect and subsequently shot and killed the male suspect's wife. *Id.* at 1193-94. An eight- day standoff ensued, during which the FBI deployed multiple tactics to compel surrender, including playing loud music, flashing bright lights at night, and referring to the husband's dead wife as if she were alive while the wife's corpse rested on the kitchen floor wrapped in blankets. *Id*. at 94. The FBI had adopted Special Rules of Engagement specifically for the Ruby Ridge incident, which the Ninth Circuit described as a "shoot-on-sight edict." *Id.* at 1193, 1202. Expressing grave concerns regarding the constitutionality of the officer's conduct, namely, the shooting of an armed suspect without warning while the suspect was retreating to his residence, the Ninth Circuit affirmed the district court's denial of qualified immunity. *Id.* at 1202-1204.

In *George v. Morris*, police officers were dispatched to a suspect's home "for a domestic disturbance involving a firearm." 736 F.3d 829, 832 (9th Cir. 2013). The suspect exited the home "onto the balcony with his walker and holding his firearm." *Id.* at 833. Whether the suspect ever manipulated the firearm or pointed it at the officers was a disputed fact. *Id.* Moreover, it was undisputed that the suspect "had not committed a crime" and "was not actively resisting arrest or attempting to evade arrest by flight." *Id*. at 838. The Ninth Circuit denied the officers qualified immunity, stating: "Today's holding should be unsurprising. If the deputies indeed shot the sixty-four-year-old decedent without objective provocation while he used his walker, with his gun trained on the ground, then a reasonable jury could determine that they violated the Fourth Amendment." *Id.* at 839.

And in *Cruz v. City of Anaheim*, police officers initiated a traffic stop of a suspect believed to be armed and dangerous. 765 F.3d 1076, 1078 (9th Cir. 2014). The officers testified that the suspect got out of his vehicle and reached for his waist band; however, the suspect was never armed and the gun was subsequently located in the passenger's seat. *Id.*

The Ninth Circuit, highlighting the potential for factual discrepancies between what the officers claimed happen and what actually occurred, reversed the lower court's finding of qualified immunity for four officers but affirmed the grant of qualified immunity for an officer located behind the suspect who fired because he believed the suspect was exchanging gunfire with the other officers. *Id.* at 1079-81, *see also id.* at 1080, n.2.

In *Estate of Lopez v. Gelhaus*, a witness observed a kid holding an AK-47, which turned out to be an airsoft rifle. 871 F.3d 998, 1001 (9th Cir. 2017). The witness did not call the police, and testified that he did not fear for his life and he did not believe it was a real rifle. *Id*. Later that day, two officers on patrol saw the kid and from approximately 65 feet away ordered him to drop the rifle. *Id.* at 1002-03. The parties disputed whether the child raised the rifle up towards the officers. *Id*. at 1003. "There were no other people present at the shooting." *Id.* The Ninth Circuit affirmed the lower court's denial of qualified immunity, primarily based on the disputed fact regarding whether the child made a harrowing gesture that would authorize the use of lethal force. *Id.* at 1020-22.

Further, in *Zion v. Cnty. of Orange*, police responded to dispatch's report of a suspect that bit and cut his mother and roommate. 874 F.3d 1072, 1075 (9th Cir. 2017). One of the responding officers fired nine shots from approximately 15 feet while the suspect fled with a knife, ran to the downed suspect, fired nine more shots, and after emptying his magazine, took a running start and stomped the suspect's head three times. *Id.* The Ninth Circuit, only analyzing the second nine-round volley, held that the officer was not entitled to qualified immunity, reasoning that a reasonable juror could conclude that it was unreasonable for an officer to use lethal force on a downed suspect armed with a knife and that it was clearly established officers could not use deadly force against "non-threatening suspect[s.]" *Id.* at 1076.

Lastly, in *Peck v. Montoya*, police officers responded to reports of a suspect, a legally blind 65-year-old male, acting erratically and threatening an innocent bystander

with a firearm at the suspect's home. 51 F.4th 877, 882-83 (9th Cir. 2022). Police testified that the suspect ignored their warnings, picked up a firearm, and raised it towards the officers. *Id*. at 883. The suspect's wife and other witnesses testified that the suspect neither moved towards nor picked up the gun. *Id*. at 884. The Ninth Circuit affirmed the lower court's denial of qualified immunity, agreeing that a fact dispute existed regarding whether the suspect was actively reaching for or possessed a firearm. *Id.* at 885-88.

Here, unlike the suspects in the above cases, who were elderly, visually impaired, not wielding a gun, located in their home, or not posing an immediate threat to officers or innocent bystanders, contemporaneous video footage shows Mr. Kirk actively waving a firearm around in broad daylight at innocent bystanders and waiving/pointing it in a manner that looked like he was actively shooting or had done so. Those innocent bystanders are further observed running away from Mr. Kirk while he is pointing a gun directly at them. Moreover, most of the above cases involve domestic disputes, and, thus, are factually dissimilar from the incident involving Mr. Kirk. In short, the factual disputes that convinced the Ninth Circuit to deny the grant of qualified immunity in the above cases do not exist here. The Court correctly concluded that this case is like *Long v. City and County of Honolulu*, 511 F.3d 901 (9th Cir. 2007), "in almost every relevant respect." (Doc. 135, at 33.) Plaintiffs may disagree, but that disagreement does not warrant alteration or amendment of the Court's Judgment.

### D. Plaintiffs' *Motley* Argument Rests Upon a Mere Disagreement with the Court's Reliance on Binding Precedent

Plaintiffs complain that the Court relied on *Motley v. Parks* for the proposition that officers may reasonably rely on information relayed by fellow officers, and that they had no opportunity to respond. (Doc. 137, at 11–12.) A court does not commit manifest error by citing controlling Ninth Circuit authority for a settled proposition that was squarely at issue—Plaintiffs themselves argued that the "active shooter" designation was an

unverified, reckless miscommunication, and the Court resolved that argument on the record before it. (Doc. 135, at 22:18-27.) The reasonableness of the officers' reliance on the dispatch report was litigated, and the Court's consideration of this issue is not a "new matter" Plaintiffs were denied a chance to address; it is the Court's legal analysis of an argument Plaintiffs already raised.

**E. Plaintiffs' Medical-Aid Argument Relitigates a Fully Briefed Issue**

Plaintiffs argue that the Court misread *Ryan v. Napier* in holding that their medical-aid theory cannot support a gross-negligence claim. (Doc. 137, at 13–14.) Plaintiffs concede that *Ryan* "[was] briefed" by both sides. (Doc. 137, at 14.) The Court applied *Ryan* and the Arizona Court of Appeals' decision in *Weber*, holding that Plaintiffs could not "base a negligence claim on conduct by [an] officer that is independent of the intentional use of physical force," and that the officers' conduct, including the asserted failure to render aid, "is inextricably linked with the intentional shooting and cannot support a gross negligence claim." (Doc. 135, at 37.) Disagreeing with the Court's ruling, Plaintiffs reference *Hernandez v. Cnty. of Santa Cruz*, No. CV-24-00353-TUC-SHR, slip op. (D. Ariz. Aug. 29, 2025); however, this case is a slip opinion, not binding authority, and Plaintiffs concede this opinion "predate[d but was not cited in] Plaintiffs' Response[.]" (Doc. 137, at 14.)[1] Plaintiffs' disagreement with that reading of *Ryan* — including their reliance on an application of *Hernandez*—is the paradigmatic reconsideration argument the Rules forbid: it asks the Court "to rethink what the court had already thought through," and merely repeats an argument previously made. *Cromwell*, 817 F. Supp. 3d at 811.

The additional submission Plaintiffs request under LRCiv 7.2(g)(2), (*see* Doc. 137, at 14:12-18), is unnecessary because the Motion supplies no basis to grant reconsideration

[1] If the Court is inclined to genuinely consider Plaintiffs' Motion on this issue, Defendants would request that the Court grant them leave to introduce additional evidence that demonstrates Officers Roy, Garza, and Ladines could not have rendered medical aid because of a policy that requires force-using officers be extricated from a scene as soon as practicable.

in the first instance.

**F. Because Plaintiffs Are Not Entitled to the Requested Relief, the Derivative Claims Still Fail**

Plaintiffs acknowledge that reinstatement of the *Monell* claim (Count III), the negligent-training claim (Count VI), and the wrongful-death and survival claims (Count I) depends entirely on the Court first amending its ruling on Count II. (Doc. 137, at 14:22-25.) Because the Motion identifies no manifest error or new, previously unavailable authority warranting reconsideration of Count II, there is no predicate for disturbing the derivative claims. The Court dismissed the *Monell* claim because "there was no underlying constitutional violation" (Doc. 135, at 34); dismissed the negligent-hiring, supervision, retention, and training claim because "the underlying tort against Ladines, Garza, and Roy fails" (I*d.* at 37); and dismissed the wrongful-death and survival claims because they "must rest on an underlying tort theory" that Plaintiffs could not establish, (I*d.* at 38). Those rulings stand with the judgment on Count II.

## IV. CONCLUSION

The Motion presents no manifest error of law or fact, no newly discovered evidence, no intervening change in controlling law, and no circumstance approaching the extraordinary showing that Rule 59(e) and Rule 60(b)(1) require. It also asks the Court to reconsider conclusions the Court reached after full briefing and a careful review of the video record, and to credit authority Plaintiffs could have — but did not — present before judgment, and which authority is squarely distinguishable in any event. Thus, Defendants respectfully request that the Court deny Plaintiffs' Motion to Alter or Amend the Judgment in its entirety and leave the Judgment (Doc. 136) undisturbed.

/ / /

/ / /

/ / /

RESPECTFULLY SUBMITTED this 6th day of November, 2026.

BROENING OBERG WOODS & WILSON, P.C.

By /s/ *Jeremiah M. Sullivan*
Sarah L. Barnes
Kelley M. Jancaitis
Jeremiah M. Sullivan
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2026, I electronically filed the foregoing with the Clerk's Office using the CM/ECF system for filing, and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Sean A. Woods
Robert T. Mills
MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiffs*

*/s/ Erin Bailey*